In the Interest of Tamara Jane ORCUTT,
Juvenile.

Floretta ORCUTT, Appellant,

v.

STATE of Iowa, Appellee.

No. 53503.

Supreme Court of Iowa.

Dec. 9, 1969.

Joe A. Greenlief, Manson, for appellant.

Richard C. Turner, Atty. Gen., Lorna Williams, Sp. Asst. Atty. Gen., and James E. Van Werden, County Atty., Adel, for appellee.

MASON, Justice.

This is an appeal from a decree in a juvenile proceeding under chapter 232, Code, 1966, as amended by chapter 203, Acts of the Sixty-second General Assembly, terminating the parent-child relationship between Tamara Jane Orcutt and Barbara Jean Coffin and the relationship between the child and Floretta Orcutt, her grandmother, who assumed the role of her mother. Only the grandmother appeals.

I. Through previous arrangement between Floretta and her daughter, then married to Gary Allen, Barbara Jean gave birth to Tamera under Floretta's name September 2, 1964, in Lincoln, Nebraska. The child's original birth certificate listed Floretta Orcutt as her mother. Although the mother's age on this certificate reflected Barbara Jean's age, it was later amended to show Floretta's age as that of the mother.

At three days of age Tamara was taken from the hospital by Floretta; they lived as mother and child from then until Floretta was arrested December 29, 1966, on a charge of manslaughter as a consequence of the death of Patricia Lynn Orcutt, an illegitimate child Mrs. Orcutt received in Nebraska with the intention of later adopting.

March 17, 1967, following her plea of guilty to the crime of manslaughter Floretta was sentenced to the women's reformatory at Rockwell City for a term not to exceed eight years.

After Floretta's arrest on the manslaughter charge Tamara was placed in Barbara's home and April 24, 1967, Barbara was granted temporary custody on her and her husband's petition for adoption and to establish paternity. At that time Barbara was married to William J. Coffin. He instituted divorce proceedings about January 15, 1968.

Barbara cared for Tamara Jane until January 25, 1968, when she was placed in a temporary foster home because of Barbara's admitted inability to cope with the problem of caring for the child.

February 8, 1968, the chief juvenile probation officer of Dallas County filed a petition in the district court, sitting as a juvenile court, alleging Tamara Jane Orcutt, a child under 18 years of age, was dependent and neglected within the meaning of Code section 232.2, subsections 14a, 14c, 15b and 15c; that Gary Allen, William J. Coffin, Barbara Jean Coffin and Floretta Orcutt are the parents of Tamara and/or her guardian; and that the parent-child relationship between Tamara Jane and her parents or guardian should be terminated.

Notice was served on Floretta Orcutt setting February 28 as the date for hearing on the petition. Continuance was granted and hearing commenced March 4 at 1:55 p.m.

Sometime before the hearing the court had appointed legal counsel for Tamara and had originally appointed another Perry attorney to represent Mrs. Orcutt, but due to a personal crisis in his family he advised the court Thursday before the Monday hearing that he would be unable to represent Mrs. Orcutt. He discussed the matter briefly with the court and advised he had word from Mrs. Orcutt about calling certain witnesses for the hearing. Friday the court appointed Mr. Sackett, also from Perry, as counsel for Mrs. Orcutt. Because of her distant confinement in the women's reformatory at Rockwell City on the manslaughter charge Mr. Sackett did

not have opportunity to consult with Floretta until 11:15 a.m. Monday.

At commencement of the hearing, the court, aware of Mrs. Orcutt's desire to call certain witnesses not present, inquired of her what she expected their testimony to be. Mrs. Orcutt replied their testimony would concern the type of care and quality of home she provided Tamara Jane during the 27 months following the child's birth.

Mr. Sackett immediately moved for a continuance stating, "I would like to move that this hearing be continued on the grounds that I did not receive notification of my appointment as her attorney until Friday morning and did not have an opportunity to speak with Mrs. Orcutt, who does desire custody of Tamara, until about 11:15 this morning, and on that basis I have not had an opportunity to adequately prepare either to present evidence on her behalf or to cross examine any witnesses which may be called by the county attorney in this matter." This motion was denied subject to change depending upon testimony introduced.

Barbara Jean Coffin appeared at the March 4 hearing without counsel and advised the court she did not wish to press her petition for establishment of paternity and adoption, asked the court to dismiss that action and stated she did not wish to participate in the hearing seeking custody of Tamara Jane.

At the conclusion of all evidence Mr. Sackett renewed the motion made at the beginning of the hearing. It was overruled and March 6 the court entered judgment terminating the parent-child relationship between Barbara Coffin and Tamara Jane and between Floretta Orcutt and the child, transferring her legal custody to the Dallas County department of social welfare with full authority to place her with a reputable child placing agency for the express purpose of adoption.

II. In seeking reversal Mrs. Orcutt as appellant contends (1) her constitutional and statutory rights to effective counsel were denied because court-appointed counsel had inadequate time to prepare and investigate or confer with his client, (2) the rights of cross-examination of witnesses and confrontation of adverse witnesses are fundamental rights which apply to juvenile and child custody cases and are unconstitutionally denied by section 232.31, Code, (3) she was denied her right to fair trial and due process and (4) the preponderance of evidence under the rules applicable to civil cases did not justify termination of the parent-child relationship.

Code section 232.28, basis of her first proposition, provides:

"The child, parents, guardian, or custodian shall have the right to legal counsel. If the minor, parents, guardian, or custodian desire but are unable to employ counsel, such counsel shall be appointed by the court."

This statute makes no distinction between a delinquency matter and one involving a dependent and neglected child. For both cases it recognizes that representation by one's duly constituted attorney is fundamental to our system of administration of justice.

In response to appellant's first assignment of error appellee's contention her constitutional and statutory rights were not denied as she was not a necessary party to the proceedings to terminate the parent-child relationship is not persuasive.

Floretta Orcutt's name was listed as the mother on Tamara's birth certificate; she had assumed the role of mother for the first 27 months of this child's life; and March 4 she was confined in the women's reformatory.

Code section 232.45 provides in part:

"The court shall have notice of the time, place and purpose of the hearing served on the parents of the child, the petitioner, the guardian of the person of the child, the person having legal custody of the child,

any individual standing in loco parentis of the child, and the guardian ad litem of any party. * * *."

The trial court was correct in determining in the circumstances here that Floretta Orcutt was entitled to notice of the hearing. It would seem necessarily to follow that if she is entitled to a hearing, she is likewise entitled to be represented by counsel, if she desires such representation; and that she also has the right to present evidence and adduce witnesses. Otherwise, the right to an appearance before the court may be but a futile gesture. In support see Arizona State Dept. of Public Welfare v. Barlow, 80 Ariz. 249, 296 P.2d 298, 300, where the court quoted this from Powell v. Alabama, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170:

" 'What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. * * * *If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.'* (Emphasis supplied.)."

This right to counsel carries with it right of counsel to prepare the client's defense.

Mrs. Orcutt contends under this proposition she was denied the assistance of effective and well-prepared counsel.

Appellant's original counsel was unable to attend the March 4 hearing through no fault or design on the part of Mrs. Orcutt.

She makes no contention Mr. Sackett was incompetent or did anything other than afford conscientious representation considering the time allowed for conferences and preparation. But she argues that because of the short notice to Mr. Sackett of his court appointment as her counsel he was not given adequate opportunity to consult with her or her witnesses or prepare and acquaint himself with the facts or law of the matter.

Appellant strongly urges this contention in relation to State's exhibit 1, a 74-page typewritten report by the chief probation officer of the fifth judicial district in which he summarizes his investigation concerning records in the Dallas County department of social welfare, the county attorney's office and conversations with Barbara Coffin and Floretta Orcutt. He described the exhibit as containing "practically all of the records involved in the case".

It is clear that a defendant in a criminal case who goes to trial has been denied effective assistance of counsel if counsel is not given adequate opportunity to prepare for trial.

In State v. Kendall, Iowa, 167 N.W.2d 909, 910, we approved this from Scalf v. Bennett, 260 Iowa 393, 399, 147 N.W.2d 860, 864:

" 'Effective' * * * means conscientious, meaningful representation wherein the accused is advised of his rights and honest, learned and able counsel is given a *reasonable opportunity* to perform the task assigned to him" (Emphasis supplied).

State v. McWilliams, 103 Ariz. 500, 446 P.2d 229, 230, contains this quote from Stirling v. State, 38 Ariz. 120, 123, 297 P. 871, 872, applicable here:

" 'His right to have counsel, and *to have his counsel prepare his case for trial* * * * is a substantial right, and *to deny his counsel sufficient time in which to prepare his case is also the denial of a substantial right;* and, under such circumstances, to have counsel appointed to represent him would be a meaningless formality

and the granting of a barren right.' (Emphasis supplied.)"

In dealing with a somewhat similar problem the court in State v. Young, 196 Kan. 63, 410 P.2d 256, 263, said:

"The duty of the court to appoint counsel, imposed by the statute, is not discharged by an assignment of counsel at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case."

As long ago as Powell v. Alabama, supra, 287 U.S. at 58, 71, 53 S.Ct. at 60, 65, 77 L.Ed. at 165, 172, a case cited with approval in Gideon v. Wainwright, 372 U.S. 335, 341, 83 S.Ct. 792, 794, 9 L.Ed.2d 799; Application of Gault, 387 U.S. 1, 36, 87 S. Ct. 1428, 1448, 18 L.Ed.2d 527; Scalf v. Bennett, supra, 260 Iowa at 399, 147 N.W. 2d at 864; State v. Wesson, 260 Iowa 331, 338, 149 N.W.2d 190, 195; State v. Kendall, supra, Iowa, 167 N.W.2d at 910; the United States Supreme Court concluded that to have effective assistance of counsel a defendant must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. Assignment of counsel under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case will not satisfy the necessary requisite of due process of law.

Maye v. Pescor, 8 Cir., 162 F.2d 641, 643, was an appeal from judgment dismissing a writ of habeas corpus where one of petitioner's contentions was incompetency of counsel. In affirming the judgment the court made this statement:

"* * * [T]he mere appointment of counsel, no matter how able, for a defendant charged with commission of crime without opportunity to consult, advise or to make such preparation for arraignment and trial as the facts of the case fairly demand would be a travesty and would not satisfy the requirements of the Fifth and Sixth Amendments. * * * [Citing authorities]."

Of the many cases considering the question of adequacy of belated appointment of counsel we cite only a few of the later federal cases: United States ex rel. Mathis v. Rundle, 3 Cir., 394 F.2d 748, 750–753, and citations therein; United States ex rel. Chambers v. Maroney, 3 Cir., 408 F.2d 1186, 1188–1192, and citations therein; United States ex rel. Carey v. Rundle, 3 Cir., 409 F.2d 1210, 1213–1214; Fields v. Peyton, 4 Cir., 375 F.2d 624, 628–629; Brooks v. State of Texas, 5 Cir., 381 F.2d 619, 624–625; and Calloway v. Powell, 5 Cir., 393 F.2d 886, 888.

Other federal cases and those from other jurisdictions dealing with this problem may be found in West's Digest, Criminal Law, key numbers 641.7(2) and 641.13(3).

■ We recognize as this court did in Chambers v. District Court of Dubuque County, Iowa, 152 N.W.2d 818, 821, that the foregoing cases involve criminal matters and a dependent or neglected child proceeding is neither criminal nor penal in character with its objective being the child's best interest and welfare. In Chambers we said, " * * * [T]his is not a civil action, but rather a special proceeding. * * * [Citing authorities]." However, these authorities convince us the right to counsel provided by Code section 232.28 requires meaningful assistance of counsel rather than technical representation for a fair hearing. This is true whether the proceedings deal with a delinquency matter or one involving a dependent and neglected child since, as stated before, this Code section makes no distinction. See Chambers v. District Court of Dubuque County, supra, Iowa, 152 N.W.2d at 822, where we note the effect of Application of Gault, supra, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, on our juvenile procedure. See also Frey, The Effect of the Gault Decision on the Iowa Juvenile Justice System, 17 Drake L.Rev. 53, 60–61.

■ Of course, in the matter of continuances the trial court is vested with a wide

discretion; but there are constitutional bounds to that discretion. Jablonowski v. State, 29 N.J.Super. 109, 102 A.2d 56, 58. Whether in any case enough time has been afforded for consultation, investigation for witnesses and preparation of the law and facts depends upon the circumstances of the case including the complexity of the factual issues and the legal principles involved.

 No one controverts appellant's fundamental assertion of insufficient time for her counsel to prepare for trial. The record does not indicate her trial counsel was furnished the 74-page report identified as exhibit 1 until it was offered in evidence. This and other affirmative showings in the record convince us Mrs. Orcutt was denied meaningful assistance of counsel. The fact she does not question Mr. Sackett's legal ability does not persuade us those qualifications can serve as the substitute for adequate preparation for trial which in our judgment could not be made in such a short time as was provided here.

The belated appointment of counsel rendered his services ineffective and for this reason the matter must be reversed and remanded.

III. In arriving at this conclusion we are aware of our holding in State v. Kendall, supra, Iowa, 167 N.W.2d at 910–911, and our earlier cases followed there, to the effect that a defendant who claims he was denied effective assistance of counsel in a criminal case has the burden to establish his counsel was ineffective and he did not have a fair trial. However, they are factually distinguishable in that each defendant was contending his attorney was unskilled, incompetent or guilty of neglect in one manner or another in representing him. No such contentions are made here but appellant maintains her counsel did not have adequate time to properly prepare in order to render meaningful assistance at the hearing.

In State v. French, 240 Iowa 1, 24–26, 35 N.W.2d 1, 14 and State v. Myers, 248 Iowa 44, 50–51, 79 N.W.2d 382, 386–387, contentions were made in motions for continuance that counsel had insufficient time to adequately prepare for trial. The facts in French resemble those here. Denial of the motion was held to be error. In Myers, where denial of the motion did not constitute error, the contention of tardy appointment of counsel was based on circumstances far different from those here and in French.

Nothing we hold here is contrary to the principles stated in Kendall, Myers or earlier cases referred to.

For a history beginning in 1962 as the Fourth Circuit moved towards the evolution of a new, more liberal rule later adopted in the Third Circuit warning that the practice of late appointment of counsel may be found "inherently prejudicial" to a defendant's rights, unless strong affirmative proof that resultant prejudice was absent be shown by the State, see United States ex rel. Mathis v. Rundle, supra, 394 F.2d at 751–753. There the Third Circuit court said:

"Should the trial court fail to appoint counsel sufficiently in advance of trial to prepare defendant's case in a reasonably thorough manner, and should defendant on collateral attack establish a prima facie case that the hasty appointment of legal assistance may have been inherently prejudicial to his trial by precluding him from the advantage of an adequately prepared defense, then it follows logically that the state should bear the brunt of rebutting the presumption of injury inherent in its skimpy compliance with the sixth amendment command."

This pronouncement tends to support our holding that the underlying reasons for placing the burden on defendant under the facts in Kendall and the cases cited as authority there do not exist under the circumstances here.

Whether any counsel is able to bring about a different result on a rehearing is not the question. The point is that because of the haste which marked commencement of trial following appointment of appellant's second counsel, Mr. Sackett was simply in no position to evaluate appellant's case and make considered judgment on issues of fact and questions of law.

IV. Under her second proposition appellant contends she was denied the right of cross-examination and confrontation of witnesses whose unsworn testimony was offered in exhibit 1; it was a physical impossibility for her to subpoena them in time for the hearing; and section 232.31 violates the rules laid down in Application of Gault, supra.

Section 232.31 as amended now provides:

"Evidence by child and parents, etc.

"The child and his parents, guardian, or custodian are entitled to be heard, to present evidence material to the case, and to question witnesses appearing at the hearing.

"The court's finding with respect to neglect, dependency, and delinquency shall be based upon clear and convincing evidence under the rules applicable to the trial of civil cases, provided that relevant and material information of any nature including that contained in reports, studies, or examinations may be admitted and relied upon to the extent of its probative value. When information contained in a report, study, or examination is admitted in evidence, the person making such a report, study, or examination shall be subject to both direct and cross-examination when reasonably available."

Section 232.46 which was not amended by the Acts of the Sixty-second General Assembly provides:

"Degree of proof required

"The court's finding with respect to grounds for termination shall be based upon a preponderance of evidence * * *." The remainder of the section is identical with that part of section 232.31, supra, following the words "clear and convincing evidence" therein.

Since we are not concerned with the quantum of proof required in considering this assigned proposition, any variance in the wording of the two sections in this respect is now immaterial. The portions of these sections relevant here are identical.

The fact appellant relies upon one section which apparently is intended to deal with neglect, dependency and delinquency proceedings rather than on the other section which apparently is intended to apply to termination of the parent-child relationship is unimportant.

We deem it advisable to call to the attention of the legislature this chapter now provides one quantum of proof in cases of neglect, dependency and delinquency and another in termination proceedings.

By authority of one of these statutes exhibit 1 was received over appellant's objection "that [State's exhibit 1] is objected to on the ground that it contains hearsay, irrelevant, and immaterial information, and that the information in it has not been adequately testified to by the witness."

Mrs. Orcutt contends this ruling deprived her of the fundamental right of cross-examination of adverse witnesses and thereby denied her a fair trial.

In re Interest of Yardley, 260 Iowa 259, 149 N.W.2d 162, filed March 7, 1967, and Harter v. State of Iowa, 260 Iowa 605, 149 N.W.2d 827, filed April 4 of that year, considered questions touching the admissibility of evidence under section 232.46 in termination proceedings. In Yardley the constitutionality of the section was neither raised nor suggested.

In re Application of Gault, supra, 387 U.S. at 42–57, 87 S.Ct. at 1451–1459, 18 L. Ed.2d at 554–563, decided May 15, 1967, was a proceeding to determine delinquency

which might result in loss of the child's liberty by being committed to a state institution. The Court considered denial of the rights of confrontation and cross-examination in a juvenile court hearing and held "absent a valid confession adequate to support the determination of the Juvenile Court, confrontation and sworn testimony by witnesses available for cross-examination were essential for a finding of 'delinquency' and an order committing * * * [the child] to a state institution * * *". The opinion refers to Standards for Juvenile and Family Courts, published by the Children's Bureau of the United States Department of Health, Education and Welfare, which states at pp. 72–73 "that testimony should be under oath and that only competent, material and relevant evidence under rules applicable to civil cases should be admitted in evidence".

The Court stated further "* * * no reason is suggested or appears for a different rule in respect of sworn testimony in juvenile courts than in adult tribunals."

As pointed out in Chambers v. District Court of Dubuque County, surpra, the effect of Gault is limited by its specific language to cases in which a juvenile might, be committed to a state institution. Nevertheless, the court's recognition of principles bearing on the question of fair trial, regardless of the type of proceeding, "clearly warns us to be wary of taking constitutional short cuts which would result in any substantially different treatment of a juvenile than that which would be accorded an adult charged with the commission of a crime". Chambers v. District Court of Dubuque County, supra, Iowa, 152 N.W.2d at 822. This case was also a termination proceeding under chapter 232.

With the foregoing in mind and in view of the fact the case must be remanded for reasons previously stated, we consider appellant's contention she was denied the fundamental right of cross-examination and confrontation of adverse witnesses. This is directed to her lack of opportunity to cross-examine those witnesses whose unsworn testimony comprised a part of exhibit 1.

■ Allen Treadway, child welfare worker, Barbara Coffin and Robert Haldeman, chief probation officer, called as witnesses by petitioner were subject to cross-examination. Appellant's assertion of error considered under this proposition does not apply to their testimony. "The main and essential purpose of confrontation is *to secure for the opponent the opportunity to cross-examine.*" 5 Wigmore on Evidence, Third Ed., section 1395. If otherwise competent, material and relevant its probative value would be for the trier of fact.

In Harter v. State of Iowa, supra, 260 Iowa at 609, 149 N.W.2d at 829, appellant contended the hearing in a termination proceeding violated her state and federal constitutional rights when hearsay evidence contained in the juvenile court folder was admitted into evidence over her objection. There we considered the objection in relation to the weight to be given the evidence rather than its admissibility in view of section 232.46.

A portion of the folder in Harter consisted of the deputy probation officer's record of day-to-day contacts with appellant and the child. The probation officer was on the stand subject to cross-examination. The folder also contained copies of a report from a school psychologist and a psychiatric examination given the child. Appellant made no effort to exercise her right to subpoena persons making these reports for either direct or cross-examination or show they were unavailable. We expressed no hesitancy in giving probative value to the psychological and psychiatric examinations.

The child's medical record was identified by the hospital's medical librarian who testified medical records were under her care, custody and control and it was her duty to make sure the entries were correct. We held the identification was sufficient to

give the records probative value. However, history which purported to recite how the injuries occurred was disregarded.

A psychiatric chart of the child containing a psychological examination and report of a hospital social worker was received in evidence. Appellant made no effort to cross-examine the psychiatrist. His report was given consideration. The reports of the social worker were based primarily on information obtained from third parties or were opinions and conclusions of witnesses based thereon as were other reports received by the probation officer and welfare worker.

After quoting from People v. Lewis, 260 N.Y. 171, 183 N.E. 353, 355, 86 A.L.R. 1001 and In re Matter of Hill, 78 Cal.App. 23, 247 P. 591, we determined that these reports had no probative value and gave them no consideration in our de novo review. We said, "If a petitioner felt the information received from such third person was essential to the hearing, that person should have been produced and subjected to the cross-examination. A trial court should not and we will not give any weight to such hearsay."

Summarized we held failure to exercise the right provided in section 232.46 to cross-examine or subpoena for direct or cross-examination witnesses making reports having reliability permitted the court to consider such evidence for its probative value; those based on "hearsay, opinion, gossip, bias, prejudice, trends of hostile neighborhood feeling, the hopes and fears of social workers" being unreliable, had no probative value.

In construing section 232.46, this court recognized the principle that only material and relevant sworn testimony of witnesses available for cross-examination and such evidence as is admissible under exceptions to the Hearsay rule applicable to civil cases have probative value in determining whether the child's best interest requires termination of the parent-child relationship.

We turn to appellant's further contention section 232.31 unconstitutionally denied her the right of confrontation.

Amendment 6 to the United States Constitution provides in part: "In all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

Section 10 of Article I of the Iowa Constitution provides in part: "In all criminal prosecutions * * * the accused shall have a right * * * to be confronted with the witnesses against him; * * *."

These constitutional provisions do not exclude evidence admissible by way of exceptions to the Hearsay rule or "introduce any new principle into the law of criminal procedure but * * * secure those that already existed as part of the [common] law * * * from future change by elevating them into constitutional law. * * *.

" * * *.

"The constitutional rule of confrontation is but a sanction or guaranty of the right recognized under the common law, and is subject to the same exceptions as then existed, and those that may be legitimately found to exist, developed or created in the future in consonance with the progress of human affairs through necessity, expediency, or public policy." 5 Wigmore on Evidence, supra, section 1397. See also section 1364 of this author's treatise for a history of the Hearsay rule.

In Harter v. State, supra, except perhaps by implication, we did not reach the problem presented when appellant desires to exercise the right of cross-examination of a witness making a reliable report who was shown to be unavailable. If on rehearing

appellant desires to exercise the right of cross-examination of such witness who is unavailable, the court will not give evidence originating from that witness probative value unless the report contains material and relevant matter admissible under an exception to the Hearsay rule.

█ Applied with this limitation we do not believe either section 232.31 or 232.46 violates the warning as to constitutional shortcuts given in Application of Gault, supra, since the main and essential purpose of confrontation will be secured for her.

On rehearing appellant's complaint it was impossible to subpoena witnesses whose sworn testimony constituted a part of the report because of lack of time will not arise.

V. If follows from what we have said, we agree appellant did not have a fair trial as asserted in her third proposition.

VI. In view of the necessity of a rehearing we do not consider her fourth proposition.

For a further hearing consistent with this opinion the cause is

Reversed and remanded.

All Justices concur, except SNELL, J., who dissents, and REES, J., who takes no part.

SNELL, Justice (dissenting).

I respectfully dissent.

The grandmother is not one of the persons listed in section 232.28.

She is neither the mother nor guardian. While she had custody in the past, she had lost custody and while serving an eight year sentence for manslaughter, she cannot act as custodian and should not be treated as such.