185 N.W.2d 726 (1971)
In re the Interest of Lily Bonita DELANEY, a child, Appellee.
STATE of Iowa, Appellee,
v.
Florence GLASBY, mother, Appellant.
No. 54227.
Supreme Court of Iowa.
April 9, 1971.
*727 David P. Miller, Davenport, for appellant.
Charles R. Fair, Davenport, for child, appellee.
*728 Richard C. Turner, Atty. Gen., Lorna L. Williams, Special Asst. Atty. Gen., Des Moines, Thomas G. Schebler, Asst. County Atty., Davenport, for appellee, State of Iowa.
MASON, Justice.
This is an appeal by Florence Glasby, natural mother of Lily Bonita Delaney born November 14, 1956, from a decree in a juvenile proceeding under chapter 232, Iowa Code, 1966, as amended, finding the child dependent as defined in section 232.2(14) b in that she needed special care and treatment required by her physical or mental condition which the parents, guardian or other custodian is unable to provide and ordering she be released from placement at the Iowa Annie Wittenmyer Home, Davenport and committed to the state director for placement at the Iowa Juvenile Home, Toledo.
A petition had been filed by the deputy Scott county probation officer alleging child neglect and dependency under section 232.2(14) b and section 232.2(15) c and d. At the hearing the child and mother were represented by separate counsel. Code section 232.28.
A detailed narration of the facts leading to the filing of this petition would serve no useful purpose other than perhaps convince the reader the trial court was faced with a difficult problem.
In urging that the proceedings be dismissed and the child discharged, the mother contends she was denied opportunity to confront and cross-examine the psychologist whose report was received in evidence over her objection, the cumulative folder offered in evidence was hearsay and did not meet the requirement of section 232.31 and there was a lack of clear and convincing proof of dependency as required by this section.
This section as amended provides:
"Evidence by child and parents, etc. The child and his parents, guardian, or custodian are entitled to be heard, to present evidence material to the case, and to question witnesses appearing at the hearing.
"The court's finding with respect to neglect, dependency, and delinquency shall be based upon clear and convincing evidence under the rules applicable to the trial of civil cases, provided that relevant and material information of any nature including that contained in reports, studies, or examinations may be admitted and relied upon to the extent of its probative value. When information contained in a report, study, or examination is admitted in evidence, the person making such a report, study, or examination shall be subject to both direct and cross examination when reasonably available."
A dependent or neglected child proceeding is neither criminal nor penal in character with its objective being the child's best interest and welfare. It is a special proceeding. In re Interest of Chambers, 261 Iowa 31, 34, 152 N.W.2d 818, 820 and Orcutt v. State, 173 N.W.2d 66, 70 (Iowa 1969).
Our review is de novo. Rule 334, Rules of Civil Procedure.
I. Appellant's contention her constitutional and statutory rights of cross-examination and confrontation of adverse witnesses were denied, stems from admission over her objection of the report of the psychologist who was not offered for cross-examination.
Amendment 6 to the United States Constitution provides in part: "In all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."
Section 10 of Article I of the Iowa Constitution provides in part: "In all criminal prosecutions * * * the accused shall have a right * * * to be confronted with the witnesses against him; * * *."
*729 The report was identified as part of the child's cumulative folder and part of the system's records. It was offered in connection with testimony of a visiting counselor of the Davenport public school system who testified he used the report in a conference with one of his superiors in making a decision that it was for the best interest of the school system that an extensive psychiatric evaluation should be conducted with Bonita before admittance to the public school system.
Appellant challenges admission of the exhibit on the ground that the "witness is not qualified as an expert, no proper foundation and exhibit `A' has not been shown as a regular part of the regular records of the school."
The decision in Orcutt v. State, 173 N. W.2d 66 turned on appellant's contention her constitutional and statutory rights to effective counsel were denied because court-appointed counsel had inadequate time to prepare and investigate or confer with his client. However, in remanding the case for further hearing we considered appellant's contention she was denied the fundamental rights of cross-examination and confrontation of adverse witnesses. We employed this language in furnishing guidelines to the trial court at 72-73 of 173 N.W. 2d:
"In re Application of Gault, * * * 387 U.S. 1, 42-57, 87 S.Ct. 1428, 1451-1459 18 L.Ed.2d 527, 554-563 was a proceeding to determine delinquency which might result in loss of the child's liberty by being committed to a state institution. The Court considered denial of the rights of confrontation and cross-examination in a juvenile court hearing and held `absent a valid confession adequate to support the determination of the Juvenile Court, confrontation and sworn testimony by witnesses available for cross-examination were essential for a finding of "delinquency" and an order committing * * * [the child] to a state institution * * *'. The opinion refers to Standards for Juvenile and Family Courts, published by the Children's Bureau of the United States Department of Health, Education and Welfare, which states at pp. 72-73 `that testimony should be under oath and that only competent, material and relevant evidence under rules applicable to civil cases should be admitted in evidence'.
"The Court stated further `* * * no reason is suggested or appears for a different rule in respect of sworn testimony in juvenile courts than in adult tribunals.'
"As pointed out in * * * [In re Interest of Chambers, 261 Iowa at 36, 152 N.W.2d at 822] the effect of Gault is limited by its specific language to cases in which a juvenile might be committed to a state institution. Nevertheless, the court's recognition of principles bearing on the question of fair trial, regardless of the type of proceeding, `clearly warns us to be wary of taking constitutional short cuts which would result in any substantially different treatment of a juvenile than that which would be accorded an adult charged with the commission of a crime'."
"The main and essential purpose of confrontation is to secure for the opponent the opportunity for cross-examination." (emphasis appears in the text) 5 Wigmore on Evidence, Third Ed., section 1395.
Later in the Orcutt opinion, 173 N.W.2d at 74, in commenting on the federal and state constitutional provisions bearing on confrontation set out, supra, we again quote from Wigmore, section 1397:
"These constitutional provisions do not exclude evidence admissible by way of exceptions to the Hearsay rule or `introduce any new principle into the law of criminal procedure but * * * secure those that already existed as part of the [common] law * * * from future change by elevating them into constitutional law. * *.
"`* * *.
"`The constitutional rule of confrontation is but a sanction or guaranty of the right recognized under the common law, *730 and is subject to the same exceptions as then existed, and those that may be legitimately found to exist, developed or created in the future in consonance with the progress of human affairs through necessity, expediency, or public policy.'"
After setting out limitations for the use of evidence originating from a witness who was unavailable for cross-examination we say "applied with this limitation we do not believe either section 232.31 or 232.46 violates the warning as to constitutional shortcuts given in Application of Gault, supra, since the main and essential purpose of confrontation will be secured for her."
Even though there is serious doubt as to the sufficiency of appellant's objection to alert the trial court to the contention she now makes that her constitutional and statutory rights were denied by receipt in evidence of the psychologist's report, our concern is whether the main and essential purpose of confrontation will be secured under rules applicable to civil cases.
The problem presented by this question is closely related to that raised by appellant's second proposition since the same attack is made in both. We therefore turn to the contention urged there.
II. Appellant insists her constitutional and statutory rights to cross-examination and confrontation of adverse witnesses were also denied by the receipt in evidence of Bonita's cumulative school folder. The folder was identified by the same counselor as a part of the regular records kept in the normal course of business of the Davenport school system. It consisted of reports of numerous persons not offered as witnesses at the hearing.
Appellant objected to the State's offer of the folder for the reason the foundation for admission was insufficient as there was no showing the identifying witness had the records involved under his control. She argues since the folder itself was being offered as evidence of the truth of the contents of reports contained in the folder without producing the persons from whom the evidence originated for cross-examination, the material was hearsay and was not shown to qualify as an exception to the hearsay rule. She pursues the same argument in challenging admissibility of the psychologist's report.
Of course, the statements of persons made at a time and place where they are not subjected to cross-examination when offered as an assertion to show the truth of the matter asserted therein are hearsay. See Crane v. Cedar Rapids and Iowa City Railway Co., 160 N.W.2d 838, 845 (Iowa 1968), affirmed 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176; McCormick on Evidence (1954 ed.), page 460; 5 Wigmore on Evidence, Third Ed., section 1361.
Although neither party to this appeal cites Code section 622.28 as a basis for his position, clearly it is beyond question from the type of identification made in connection with the offer of the psychologist's report and the cumulative folder, objections made thereto and arguments advanced in this court both rely on the exception to the hearsay rule for regular entries in support of their respective points of view.
This section which had codified the common law exception for regular entries by simplifying and reforming the procedure for admissibility provides:
"Writing or recordwhen admissible absence of recordeffect. Any writing or record, whether in the form of an entry in a book, or otherwise, including electronic means and interpretations thereof, offered as memoranda or records of acts, conditions or events to prove the facts stated therein, shall be admissible as evidence if the judge finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness, and if the judge finds that they are not excludable *731 as evidence because of any rule of admissibility of evidence other than the hearsay rule.
"* * *.
"The term business, as used in this section, includes business, profession, occupation, and calling of every kind."
Under this statute a memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition provided a foundation is established which would justify a finding by the judge that: (1) the writing or record was made in the regular course of business, (2) at or about the time of the act, condition or event recorded, (3) the source of information from which made, the method and circumstances of preparation were such as to indicate trustworthiness and (4) they were not excludable as evidence because of any rule of admissibility of evidence other than the hearsay rule. Examination of the record fails to reveal any evidence which would sustain a finding these requisites of preliminary proof were established. McCormick on Evidence (1954 ed.), section 289.
In absence of such foundation justifying admission as an exception to the hearsay rule recognized in section 622.28 the psychologist's report and folder contents would be excluded under the rules applicable for civil cases when properly challenged. Consequently when thus questioned, they could not serve as a basis for decision in a juvenile delinquency proceeding in light of Gaul's reference to Standards for Juvenile and Family Courts as pointed out earlier.
III. The question remains whether the reports involved are to be relied on as a basis for decision in a dependency hearing under section 232.31 which does not require the precise foundation for admissibility as that fixed by section 622.28.
The last paragraph of this previously quoted section was added by the Sixty-second General Assembly, chapter 203, section 5, effective July 1, 1967. Its language is limited in application to proceedings in the juvenile court involving neglected, dependent and delinquent children and does not pretend to establish a rule of evidence for other civil proceedings.
However, the warning expressed in In re Interest of Chambers, supra, must be heeded because of the trial court's commitment of Bonita to Iowa Juvenile Home.
In re Lee, 126 Vt. 156, 157-159, 224 A. 2d 917, 918-919, decided five months before Gault, involved a dependency hearing under a Vermont statute providing for the municipal court to sit as a juvenile court and that its action be summary in nature. In reversing the trial court's determination based on testimony given by persons not under the sanction of the witness oath and containing incompetent and inadmissible evidence as well as the report of a social worker not offered as a witness for cross-examination, the supreme court made this pronouncement:
"Although juvenile proceedings are summary, they `must not be so summary that they fail to measure up to the minimum essentials of substantive due process.' * * * [citing authorities]
"* * *.
"Constitutional safeguards must be observed in this class of proceeding. The statute suspending certain formalities notwithstanding, fulfilment of constitutional requirements cannot be avoided. The parties have the right to be faced by and hear the witnesses who give evidence in court against him and have the opportunity to cross-examine them. * * * Due process means the presentation of competent evidence on which the findings of the court are predicated and the commitment rests. * * *."
In the Gault opinion, 387 U.S. at 57, 87 S.Ct. at 1459, 18 L.Ed.2d at 562, the following is a portion of the last paragraph *732 of the division dealing with the right of confrontation and cross-examination:
"* * *. We now hold that, absent a valid confession, a determination of delinquency and an order or commitment to a state institution cannot be sustained in the absence of sworn testimony subjected to the opportunity for cross-examination in accordance with our law and constitutional requirements."
In Reed v. Duter, 416 F.2d 744, 749 (7 Cir. 1969) the court points out that "Gault must be construed as incorporating in juvenile court procedure, which may lead to deprivation of liberty, all of the constitutional safeguards of the Fifth and Sixth Amendments to the Constitution of the United States which apply, by operation of the Fourteenth Amendment, in criminal proceedings. * * * [A]ny finding of delinquency which may lead to deprivation of liberty cannot stand unless such finding be based upon the sworn testimony of his accusers, subject to the full opportunity for cross-examination. * * * [citing authority]."
These pronouncements lend support for Wigmore's position quoted in Division I, supra, that securing for the opponent the opportunity for cross-examination is the main and essential purpose of confrontation.
Section 232.31 provides for cross-examination of the persons making the report, study, or examination when reasonably available. Thus, when those persons are made available for cross-examination their reports, studies and examinations, insofar as they possess probative value, may be relied on as a basis for decision in a dependency hearing under this section. The main idea in the process of confrontation is thus secured and the constitutional challenge made here is without merit.
The problem presented by the contention the constitutional right of confrontation has been denied arises when persons making the report, study or examination are unavailable for cross-examination. As stated, neither the psychologist nor the persons furnishing the information and reports from which the school folder was compiled were offered for direct or cross-examination.
In this connection, the first question to be answered is whether persons making the reports offered were shown to be unavailable for cross-examination.
It is undisputed the psychologist was no longer employed by the Davenport school system when his report was offered but there is no evidence in the record he could not be brought before the court by subpoena. It is true counsel makes the statement in brief and argument this person was actually out of the state beyond reach of process but this does not constitute the record upon which the contention must be decided. There is no showing in the record appellant exercised her right to subpoena persons involved in preparation of the school folder and that they were unavailable for cross-examination.
It cannot be logically argued appellant's objection to the offer of the exhibits would serve to alert the trial court that lack of opportunity to cross-examine witnesses preparing the reports was a ground for contesting admissibility.
On the other hand, there is no showing the exhibits offered by the State were made available to counsel for the juvenile or parents a sufficient length of time before hearing to enable him to ascertain and advise the court before trial which witnesses would be desired for cross-examination.
When proposed exhibits are thus furnished, it is the juvenile's burden to establish that legal process available to bring the desired witnesses into court for cross-examination has been exhausted and that they are unavailable and beyond the reach of a subpoena and that he had advised the court a reasonable time before trial which witnesses he wished to have available for cross-examination in order to preserve any *733 assigned error asserting introduction in evidence of reports, studies or examinations under section 232.31 constituted denial of constitutional rights of confrontation. Harter v. State of Iowa, 260 Iowa 605, 609-610, 149 N.W.2d 827, 829-830. If reports are not made available this should be shown.
This procedure will secure for the juvenile the opportunity required by authorities cited for cross-examination of witnesses whose reports are relied on by the State to prove its case.
When the juvenile sustains this burden evidence originating from such unavailable witness which does not contain material and relevant matter admissible under an exception to the hearsay rule shall not be given probative value by the trial court or this court. Orcutt v. State, 173 N.W.2d at 74-75.
This record leaves much to be desired to properly present the issue raised by appellant's contention. Perhaps it was for this reason the trial court failed to mention in its decree whether these exhibits were relied on in reaching the conclusion Bonita should be committed to the state director.
In any event, in view of the guidelines set forth appellant's contention as to the psychologist's report and the folder contents cannot be sustained under the record presented for our de novo review.
We point out appellant's standing to raise her child's constitutional right to be confronted by witnesses against her when the child had counsel of her own was not an issue in the trial court or on this appeal and has not been reached in this review.
IV. Appellant in support of another proposition relies on the requirement of section 232.31 that a finding of dependency be based upon clear and convincing evidence. She maintains the State failed to carry this burden. We do not agree.
Our review of the record reveals Bonita had lived with her mother, step-father and a brother and sister in Davenport while attending Lincoln school for two years. When suspended three days due to difficulty with the other students in the lunch room, playground and classroom, she entered Sacred Heart school in the same city finishing the sixth grade. When her mother and stepfather were having difficulty, Bonita left Sacred Heart and enrolled in a St. Louis school while living with her grandmother. This arrangement became unsatisfactory and she returned home, ran away several times and was later placed in a foster home. She had been at the Annie Wittenmyer Home for two months before the hearing.
Bonita testified to many incidents of being disciplined by her mother for various reasons, some of which appear to be groundless, with an ironing cord, shampoo hose, a kitchen pan, or anything at hand. This is but a brief summary of Bonita's testimony which is set out rather fully in the record.
Appellant as a witness does not deny inflicting punishment on Bonita with various objects but in argument emphasizes the fact no bones were broken, no stitches were necessary nor was the child ever hospitalized. There is some evidence of excessive drinking by the mother and stepfather.
The foregoing evidence plus testimony of other witnesses who were subject to cross-examination at the hearing clearly convinces us beyond any reasonable uncertainty or substantial doubt Bonita has problems requiring special care and treatment which her parents have thus far been unable to provide or at least had failed to do so. We find sufficient competent evidence on which to base a finding of dependency and rest the commitment to the state director.
V. In other propositions assigned appellant complains Bonita was not in real need of special care and treatment required by her physical and mental condition which her parents were unable to provide; the *734 court abused its discretion in that no well-defined and specified mental condition, like retardation, was proved nor any recognizable standard of emotional disturbance applied to the situation. She contends under these propositions the court's finding was made merely because no foster home was available but was at the state institution.
We have considered appellant's argument in support of these propositions and find them to be wholly without merit under the factual circumstances here.
Accordingly, the trial court's decree is
Affirmed.
All Justices concur except BECKER and UHLENHOPP, JJ., who concur specially.
BECKER, Justice (concurring specially).
I concur in the result but I cannot concur in what is said in Divisions II and III of the opinion.
I. As to Division II the discussion of Code section 622.28 and the common law that it codifies is, to me at least, immaterial. The principles and statutes examined in Division II are valid as to ordinary litigation but they are not valid as to admissibility of evidence in Juvenile Court litigation. This is true because section 232.31 explicitly makes the evidence admissible. If the statute in question is constitutional the ordinary rules as to admission of evidence do not apply.
II. As to Division III, the holding goes beyond the necessities of this case and seeks to promulgate evidentiary rules based on fact situations not before the court. While such an analysis is advisable under certain circumstances (and often indulged in by courts) I submit the opinion goes too far in this case. The basic issues considered in Division III are decided in Harter v. State, 260 Iowa 605, 149 N.W.2d 827, 829, 834, which is clear on both the admissibility of the contested evidence and the constitutionality of the statute which makes it admissible:
"Therefore, evidence, which under the ordinary rules of evidence applicable to a civil trial would be excluded as hearsay, lacking a proper foundation, improper opinion evidence, or not the best evidence, is admissible in such proceedings and the nature of the evidence is to be considered as it affects its probative value rather than its admissibility. In re Yardley, et al., 260 Iowa 259, 149 N.W.2d 162, filed March 7, 1967. * * *.
"We find nothing unconstitutional in the evidentiary rules set forth in section 232.46. The provisions of chapter 232 seek to retain the advantages of an informal hearing in juvenile court while providing safeguards which will guarantee each party his or her fundamental rights to a fair hearing. * * *."
Section 232.31 (dealing with cases of neglect and dependency) is identical to section 232.46 (dealing with cases of delinquency). What was said in Harter v. State, supra, is controlling here until overruled.
In Orcutt v. State, 173 N.W.2d 66 (Iowa 1969), we again held the quoted provisions constitutional both as to sections 232.31 and 232.46. We held the confrontation of witnesses principle was not violated where the parties had a right to demand the presence of witnesses. Since no demand for production of witnesses was made in this case we need not and should not go further. But the majority continues on and decides the proper interpretation in the event the right to confrontation is demanded. The analysis seems to be based largely on a fear the section might otherwise be unconstitutional. I cannot concur in this portion of the opinion.
III. The admonitions in In re Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, require juvenile courts to recognize constitutional safeguards for children just as they are recognized for adults. The subject statutes do not offend in this regard. Gault also requires "sworn testimony subjected to the opportunity for cross-examination". It does not require *735 that all evidence be sworn testimony subjected to an opportunity for cross-examination; i. e., it does not rule out all hearsay evidence and all documentary evidence. In Gault, as in In re Lee, 126 Vt. 156, 224 A. 2d 917 (cited by the majority) there was no sworn testimony whatsoever. Both commitments were made on simple unsworn statements to the court. The sweep of the language in each case is understandable under such fact situations. However, the broad language of the cases was not, I submit, meant to eliminate such statutes as section 232.31. Stated otherwise neither Gault nor Lee eliminates reports and like evidence when used to corroborate sworn cross-examined testimony such as was offered in this case.
The impact of the confrontation clause on hearsay testimony has been the object of considerable consideration in the recent United States Supreme Court decisions. The Supreme Court as a whole is by no means sure of the extent or force of such impact. But I believe it is clear that none of the nine present Justices would eliminate hearsay exceptions altogether and none seem to eliminate reasonable extension of evidentiary rules by such a device as is found in section 232.31.
Since the problem of unconstitutionality has been reopened as to section 232.31 some Supreme Court of the United States statements must be examined here.
In Pointer v. Texas, 380 U.S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965) the Sixth Amendment's right of an accused to confront the witnesses against him has been applied to the states. At page 406 of 380 U.S., at page 1069 of 85 S.Ct., at page 928 of 13 L.Ed.2d the court speaking through Justice Black stated: "* * * a major reason underlying the constitutional rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him * * *."
"* * * This court has recognized the admissibility against an accused of dying declarations, Mattox v. United States, 146 U.S. 140, 151, 13 S.Ct. 50, 36 L.Ed. 917, 921, and of testimony of a deceased witness who has testified at a former trial, Mattox v. United States, 156 U.S. 237, 240-244, 15 S.Ct. 337, 39 L.Ed. 409-411. See also Dowdell v. United States, supra, 221 U.S. 325, at 330, 31 S.Ct. 590, 55 L.Ed. 753, at 757; Kirby v. United States, supra, 174 U.S. 47, at 61, 19 S.Ct. 574, 43 L.Ed. 890, at 896. Nothing we hold here is to the contrary. The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine. Compare Motes v. United States, supra, 178 U.S. 458, at 474, 20 S.Ct. 993, 44 L.Ed. 1150, at 1156. There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses. * * *." (Emphasis supplied.)
In Barber v. Page, 390 U.S. 719, at page 722, 88 S.Ct. 1318, at page 1320, 20 L.Ed.2d 255, at page 258 (1968) an exception to the right of confrontation was restated: "It is true that there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. E. g., Mattox v. United States, supra, (witnesses who testified in original trial died prior to the second trial). This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement. See 5 Wigmore, Evidence §§ 1395-1396, 1402 (3d ed 1940); C. McCormick, Evidence §§ 231, 234 (1954)."
At page 724 of 390 U.S., at page 1322 of 88 S.Ct., at page 260, of 20 L.Ed.2d the court summarized: "* * * In short, a witness is not `unavailable' for purposes of the foregoing exception to the confrontation *736 requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly."
In California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (June 23, 1970), the Supreme Court held that the Confrontation Clause was not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness subject to cross-examination. A California statute permitted the use of such statement. At pages 155-156 of 399 U.S., at pages 1933-1934 of 90 S.Ct., at pages 495-496 of 26 L.Ed.2d, the 7-man majority speaking through Justice White said:
"* * * The issue before us is the considerably narrower one of whether a defendant's constitutional right `to be confronted with the witnesses against him' is necessarily inconsistent with a State's decision to change its hearsay rules to reflect the minority view described above. While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more nor less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. See Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied." (Emphasis supplied).
The latest Supreme Court case on the subject is Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (Dec. 15, 1970). There the evidence in question was a statement made by an alleged accomplice of the defendant to a fellow prisoner. The alleged accomplice did not appear as a witness at defendant's trial. The case arose in Georgia which has a statute admitting a conspirator's statement against a fellow-conspirator. The court by a 5-4 decision held defendant's constitutional right to confrontation had not been violated. Mr. Justice Stewart announced the judgment of the court. Justices Burger, Blackmun and White joined. At page 80 of 400 U.S., at page 215 of 91 S.Ct., at page 222 of 27 L. Ed.2d the opinion states: "It is not argued, nor could it be, that the constitutional right to confrontation requires that no hearsay evidence can ever be introduced." The court went on to hold that the exception to the hearsay rule in Georgia was constitutional as applied since (1) the evidence in question was not "crucial" or "devastating", (2) there were 19 other witnesses for the prosecution, one of whom was an eyewitness to the crime and all of whom were subject to cross-examination, (3) there were "indicia of reliability" in the surrounding circumstances. The Chief Justice, and Justice Blackmun concurred stating an additional ground that if it was error it was harmless.
Mr. Justice Harlan concurring in the result stated the standard to be applied to such cases is that of due process and not confrontation.
Justice Marshall joined by Black, Douglas and Brennan, JJ., dissented. At page 110 of 400 U.S., at page 230 of 91 S.Ct., at page 239 of 27 L.Ed.2d the dissent narrowed its specific position: "* * * To decide this case I need not go beyond hitherto settled Sixth and Fourteenth Amendment law to consider generally what effect, if any, the Confrontation Clause has on the *737 common law hearsay rule and its exceptions, since no issue of such global dimension is presented. Cf. Bruton v. United States, 391 U.S. 123, at 128 n. 3, 88 S.Ct. 1620, 20 L.Ed.2d 476, at 480. The incriminatory extrajudicial statement of an alleged accomplice is so inherently prejudicial that it cannot be introduced unless there is an opportunity to cross-examine the declarant, whether or not his statement falls within a genuine exception to the hearsay rule."
When one reads all of these statements in context it seems clear there is no disposition to eliminate hearsay altogether or to condemn development of new evidentiary rules. Therefore I cannot concur in the analysis found in Division III or the conclusion as stated: "When the juvenile sustains this burden evidence originating from such unavailable witness which does not contain material and relevant matter admissible under an exception to the hearsay rule shall not be given probative value by the trial court or this court. Orcutt v. State, 173 N.W.2d at 74-75."
The litigant has a right to reach the witness for cross-examination if the witness is reasonably available. If the witness is not reasonably available the evidence may well be admissible nonetheless. In such event the evidence shall be given such probative value as it deserves. If the character of the evidence is such as to offend judicial notions of due process it should, of course, be eliminated. But this will depend entirely on the nature of the evidence offered, the nature of all of the other evidence in the case and, as the courts are wont to say, the totality of the circumsatnces. Thus each case will have to be decided on its own facts.
The tasks of the juvenile court and the procedures developed are somewhat akin to the tasks and procedures developed in administrative law. The analogy is close enough to make the following quotation worthwhile. Pike and Fischer, Administrative Law, Reporter-Service-Text, Current Text, § 48e.52, Hearsay Evidence in Administrative Hearings:
"Underlying this theory is a conception of the relationship between administrative body and reviewing court as the same as that prevailing between jury and court. In assuming this relationship, the court loses sight of the expert character of the administrative tribunal. To the extent that the common law rules of evidence are designed to prevent a jury of untrained laymen from relying on evidence of low probative value, they are inapplicable to a body of specialists constantly handling the same type of subject-matter and problems. If the only reason for refusing to permit such a body to consider hearsay evidence of any kind is that the admission of such evidence would constitute a denial of the right of cross-examination, the objection loses force in view of the fact that the admission of hearsay under any of the well-recognized exceptions to the hearsay rule has the same effect. The theory of the exceptions, however, is that the circumstances surrounding the uttering of the statement warrant its credibility, and that therefore the absence of cross-examination will not prejudice the adverse party before a jury; but an agency by virtue of its expertness should be competent to evaluate evidence whether or not it falls into one of the proscribed formal categories of the common law. Of course, if an agency should make a finding based entirely on hearsay evidence, when proof of the same facts by other available evidence would have afforded an opportunity for cross-examination, a court might well be justified in holding that the finding was not based on substantial evidence. But such a judgment resting on the particular circumstance presented does not justify a blanket prohibition against the admission of any hearsay evidence whatever in administrative proceedings. * * *." (Emphasis supplied).
So it is in juvenile court. The juvenile judge must be presumed to have special expertise. Juvenile court work becomes increasingly complex. Government seeks *738 to lend a hand by supplying experts from other fields and other disciplines. The judiciary simply cannot continue to insist on production of a witness for each and every bit of information germane to the problem. If it does so insist society will delegate the task to a different system. This will likely harm, rather than help, the cause of youth.
In summary I would reaffirm the constitutionality of section 232.31, note that there is enough evidence by direct sworn statement to sustain the trial court, but also note that we have given the contents of school folder such probative value, and only such probative value, as we think it deserves.
UHLENHOPP, J., joins in this special concurrence.