**In the Interest of Bryan KARWATH et al.,**
**Appellees.**

**The STATE of Iowa, Appellee,**

v.

**Raymond KARWATH, Appellant.**

**No. 55089.**

Supreme Court of Iowa.

July 5, 1972.

Donald E. Doyle, Davenport, for appellant.

Bruce A. Shawver, Davenport, for children, appellees.

Richard C. Turner, Atty. Gen., Lorna L. Williams and Thomas R. Hronek, Sp. Asst. Attys. Gen., and Loren T. Hora, Davenport, for appellee.

McCORMICK, Justice.

In this appeal the natural father of three children in legal custody of the Scott County Department of Social Services seeks reversal of a juvenile court order for surgical removal of the children's tonsils and adenoids. We affirm.

Our review is de novo. § 232.58, The Code; In re Delaney, 185 N.W.2d 726, 728 (Iowa 1971).

The children involved are Bryan, ten, Colleen, eight, and Neil, six. Their parents Raymond and Nellie Karwath asked to be relieved of their care and custody in January 1970. The father was unemployed and indigent and the mother emotionally ill. The children were initially placed in St. Vincent's Home. They were adjudged dependent after hearing in June 1970 and legal custody was given to Scott County Department of Social Services for foster home placement. Bryan and Neil were placed in one home and Colleen in another.

On July 7, 1971, juvenile court hearing was held upon the department's application for authorization for surgical removal of the children's tonsils and adenoids. The

father resisted. All medical evidence supported the application.

Bryan started getting sore throats in March 1971. They brought sneezing, coughing and difficulty in breathing through his nose. The combined discomfort caused him to miss school several times. During about his fourth sore throat he was seen by Dr. E. L. Manning, a specialist, who noted markedly enlarged and inflamed tonsils and prescribed medication. Although some relief followed, the condition persisted and tonsilloadenoidectomy was scheduled for June 8, 1971, but has not yet been done because of this controversy.

Neil had sore throats from the time he was first placed in foster care. Dr. Manning found his tonsils enlarged and inflamed in June 1971, and he had middle ear infection in both ears. He was also scheduled for June 8, 1971, surgery.

Dr. Manning believed both boys needed their tonsils and adenoids out to prevent further middle ear infections and tonsillitis. Hearing loss and rheumatic fever are possible results of continuing recurrence. Present emergency did not exist, but the surgery was needed within a matter of weeks.

Colleen was first seen in September 1970 by Dr. B. E. Hoenk, also a specialist. He observed enlarged and inflamed tonsils and adenoids and recommended they be removed. In December 1970 Colleen had inflamed adenoids and acute ear infection. Despite medication she continued to carry fluid behind her right eardrum and the tonsil and adenoid condition persisted. By June 1971 her right eardrum had thickened. Although her hearing was clinically normal, Dr. Hoenk believed the tonsils and adenoids urgently needed removal. The surgery could wait a few days or weeks but not months or years.

When asked to state his objection to his children's surgery, Mr. Karwath said:

"My convictions are that unless it is absolutely necessary, beyond the shadow of a doubt, that this should not be done. That all other courses of remedy should be taken first and given a sufficient well formulated trial period, enough to really prove whether it is going to do any good or not."

He based his convictions on "religious faith" not further explained. He did not oppose medication or surgery but asked six months' delay to see if surgery was still advised. He wanted chiropractic, medication and the surgery resorted to in that order. He claimed Colleen's problem had been helped in the past by three or four months' chiropractic treatments. Even at the end of six months he would not agree to surgery without taking the children to several doctors himself to get "a fresh opinion without all the history dug up."

This court stayed the surgery to permit appeal. The sole issue is whether the evidence supports the order for surgery against the father's wishes.

These children were adjudged dependent because their parents desired to be relieved of their care and custody. § 232.2(14) (c), The Code. Legal custody was placed in the county department of social services pursuant to Code § 232.33 (3) (b). Legal custody imposes a duty to provide "food, clothing, housing, education, and necessary medical care, all subject to residual parental rights and responsibilities * * *." § 232.2(9), The Code. When a child is removed from parental control the court "shall secure for him care as nearly as possible equivalent to that which he should have been given." § 232.1, The Code. The objective is the child's best interest and welfare. In re Delaney, *supra.*

Here we have a conflict between legal custodian and holder of residual parental rights as to what medical care is in these children's best interests, and the juvenile court sided with the legal custodian. Appellant claims a showing of medical crisis demonstrating an immediate threat to life

and limb is essential before that result is justified. We do not agree.

The State has a duty to see children receive proper care and treatment. In re Loeffelholz, 162 N.W.2d 415 (Iowa 1968). This means parents have no right to deprive their children of proper medical care. The legal custodian's statutory duty to provide ordinary medical care presupposes a right to do so in appropriate circumstances over parental objection even in absence of immediate risk to life or limb. See In re Sampson, 29 N.Y.2d 900, 278 N.E.2d 918 (1972); Mannis v. State ex rel. DeWitt School Dist., 240 Ark. 42, 398 S.W. 2d 206 (1966) (pre-school vaccination); 59 Am.Jur.2d Parent and Child § 9; 43 C.J.S. Infants § 11, page 64; see also Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) (compulsory vaccination of adult).

This case is somewhat analogous to Re Seiferth, 309 N.Y. 80, 127 N.E.2d 820 (1955). There a father resisted surgery on his son's cleft palate and harelip because he believed the "forces of the universe" would heal it. The court recognized the right of the court to direct surgery even in the absence of risk to the child's life or limb. In a split decision a majority held surgery should not be ordered since the 14 year old son also opposed it and forcing it on him might produce psychological damage. Here that reason is not present and the rule leads to a different result.

Where the best interests and welfare of children are involved even parental preference based upon asserted religious belief may be required to give way. Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645, 653 (1944) ("The right to practice religion freely does not include liberty to expose * * * the child * * * to ill health or death."); see also Jehovah's Witnesses in State of Wash. v. King County Hosp., W.D.Wash., 278 F.Supp. 488 (1967), aff'd, 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed.2d 158 (1968); Annot., 30 A.L.R.2d 1138.

Each case of this kind must depend upon its own facts. Reasons given for believing surgery necessary must be weighed against reasonableness of parental objection.

In this case the children are admittedly dependent upon the State for medical care. The evidence shows they need it. The State has duty and power to provide it. Appellant protests the nature rather than necessity of treatment. His view is without support in the record apart from his subjective speculation. Our paramount concern for the best interests and welfare of the children overrides the father's contention that absolute medical certitude of necessity and success should precede surgery. Nor is it required that a medical crisis be shown constituting an immediate threat to life and limb.

Where the best interests and welfare of children in care and custody of the State reasonably require medical treatment opposed by a parent, residual parental rights cannot be invoked to prevent it. The evidence clearly shows removal of tonsils and adenoids is necessary with reasonable medical certainty to restore and preserve the health of these wards of the State. Appellant's objection has forestalled surgery much beyond the period advised by the doctors. It should not be further delayed by these proceedings.

The order for surgery was right.

Affirmed.

All Justices concur.