In the Interest of Jerry OSBORN, a child.

STATE of Iowa, Appellee,

v.

Donna McFARLAND, Mother, Appellant.

No. 2–56755.

Supreme Court of Iowa.

July 31, 1974.

Michael W. Liebbe, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Lorna Lawhead Williams, Special Asst. Atty. Gen., Theodore R. Boecker and Michael Murphy, Asst. Attys. Gen., for appellee.

Heard by REYNOLDSON, Acting C. J., and MASON, RAWLINGS, REES and UHLENHOPP, JJ.

REES, Justice.

This appeal is by Donna McFarland, natural mother of Jerry Osborn who was born January 18, 1970. Mrs. McFarland appeals from a decree in juvenile proceedings under chapter 232, The Code, 1973, finding Jerry dependent as "dependency" is defined in section 232.2(14)(b) in that he was in need of special care and treatment required by his physical or mental condition, which care and treatment the parents were unable to provide. The court's decree placed Jerry in the custody of the Scott County department of social services.

Petition was filed by Charles Callahan, an employee of the Scott County department of social services, who was charged in his work with the investigation of alleged child abuse and child neglect cases. The petition asserted and alleged that Jerry Osborn was a dependent child as defined in section 232.2(14)(b) of the 1973 Code because he was in need of special care and treatment required by his physical or mental condition which his parents were unable to provide; that Jerry was a neglected child as defined in section 232.-2(15)(c) in that he was without proper parental care because of the faults or habits of his parents, and that further he was a neglected child as defined in section 232.-2(15)(d) of the 1973 Code in that he was living under conditions injurious to his mental or physical health or welfare.

At the hearing, the child Jerry, the mother Donna McFarland, and the father

Larry Osborn, were all represented by separate counsel, as is required by section 232.28, The Code, 1973.

Mrs. McFarland states the following issues for review:

1) Trial court abused its discretion in removing the child from his home and mother absent "clear and convincing" evidence, and

2) Trial court erred in not sustaining appellant's objections to a report from the University of Iowa.

Our review in this matter is de novo. Rule 334, Iowa Rules of Civil Procedure.

I. The first of two hearings involving the custody of Jerry Osborn was held on June 12, 1973, which hearing was continued to permit an evaluation of the child at the University of Iowa. Hearing was resumed on August 30, 1973, and the order and decree appealed from was entered on September 7, 1973. In its decree the trial court found Jerry to be a dependent child in accordance with the prayer of the petition but continued the matter insofar as the allegations of neglect were concerned. Temporary custody of Jerry was placed in the Scott County department of social services, and the department was directed to furnish special help to overcome the problems which had confronted the child. Donna McFarland was granted visitation rights, and the department of social services was required to report in writing at monthly intervals on the progress of the child and placement goals. The social services department was authorized to permit home visits for periods of not to exceed ten days without prior approval of the court.

At the hearing four social service workers testified. The evidence disclosed that in 1969, prior to the birth of Jerry, a child-abuse complaint had been received by the department concerning Larry Gladfelter, the oldest child of Mrs. McFarland, but details are not provided in the record and it is not clear that any court action was taken or recommended with regard to the complaint of child abuse at that time.

At the time of the hearing as above noted, Jerry was three and a half years old, having been born January 18, 1970. In March of 1971 it was reported to the department of social services that Jerry had apparently sustained a broken clavicle but that his mother had refused to seek medical attention for it. Upon investigation by a social worker the child was taken to a doctor and was diagnosed as having a broken collarbone. It developed then that the child had probably fallen out of his crib.

In September of 1972 there was a report to the authorities by a hospital that Jerry had been admitted with a cut over his left eye, a bruise on the bridge of his nose, numerous other bruises over the body, and a black eye. It developed that these injuries were sustained when Jerry was beaten by an uncle who was babysitting with him, and further investigation disclosed the uncle, aged 15, was mentally retarded.

On one other occasion Jerry sustained an injury when he fell from a porch onto a lawnmower, and had to be taken to a hospital for examination and treatment.

In March of 1973, while Mrs. McFarland was absent from the home, having just been delivered of a fourth child, Jerry was placed in the temporary care of a Mrs. Barnes, a sister-in-law of Donna, in Illinois. In some manner Jerry sustained a fractured left femur.

The appellant's principal complaint seems to be bottomed upon the fact that none of the employees of the Scott County social services department who testified at the two hearings recommended removing Jerry from his home. We have read the appendix and also the transcripts of the testimony adduced at both hearings. From the testimony of the witnesses, we are forced to the conclusion that they were all in somewhat of a quandary as to just what disposition to make of Jerry. Jerry had been placed in a foster home in which he had not gotten along. He was characterized by his mother, according to the testimony of the witness Callahan, as being hyperactive, a bad child, a clumsy child, and a

disobedient child. While it is true that no direct recommendation for the removal of the child from the home of the mother was made in the record by any of the social service workers, it must be remembered that the ultimate determination of the question as to the best interests of Jerry rested with the court. At best we could only characterize the testimony of the social service workers as being equivocal; they seemed reluctant to make any recommendation to the court and we must conclude that the court, looking solely to the best interests of Jerry, was adequately justified by the record in ordering his placement with the Scott County department of social welfare.

The appellant insists the showing made was not by "clear and convincing evidence", as we have defined that term in In re Interest of Henderson, 199 N.W.2d 111, 121 (Iowa 1972):

> "We are satisfied, however, the term 'clear and convincing' connotes the establishment of facts by more than a preponderance of the evidence, but something less than establishing a factual situation beyond a reasonable doubt."

Appellant makes reference to the presumption that a child should remain with his natural mother and cites In re Wardle, 207 N.W.2d 554 (Iowa 1973). In *Wardle* we recognize the presumption the best interests of a child will be served by leaving him with his parents, but observed it was not conclusive. We further observed that the State as *parens patriae* has the duty to see that every child within its borders receives proper care and treatment. We should also observe that in *Wardle* we were concerned with a termination of the parent-child relationship, which situation is not present in the matter before us here.

On the whole record, under our de novo review, we conclude trial court was amply justified in ordering and decreeing that the custody of Jerry Osborn should be placed with the Scott County department of social welfare.

II. Mrs. McFarland asserts error in the admission into evidence of the report from the University of Iowa. She concedes the report could be admitted as an exception to the hearsay rule provided sufficient foundation be laid.

At the close of the evidence and before the entry of the decree, the court made the following observation concerning the report from the University, as disclosed by the record:

> "The report of Iowa City, of course, we all know that probably isn't the true finding. I mean, there is a lack of some sort of effort as to what the problems are and how to resolve them. They are a distance from here, and I think that we can probably discard that one for the time being."

It is obvious, therefore, trial court did not consider the report from the University of Iowa in reaching its decision as reflected by its order and decree.

In Bellew v. Iowa State Highway Comm., 171 N.W.2d 284 (Iowa 1969), at page 291, this court said:

> "Where, then, improper evidence is admitted in the trial of an action at law, though the trial be to the court, prejudice is presumed and judgment will be reversed unless the record shows affirmatively that it was afterwards discarded. (citations)."

See also In re Delaney, 185 N.W.2d 726 (Iowa 1971).

Clearly, trial court gave no consideration to the report of the University of Iowa in reaching its conclusions and entering its order and decree. The contention of the appellant in this regard is, therefore, without merit.

We find no reversible error, and affirm the trial court.

Affirmed.