In the Interest of Derrick Dean
WELCHER, a child.

Appeal of LeAnn WELCHER.

No. 3–58892.

Supreme Court of Iowa.

June 30, 1976.

Gordon Liles, Hutcheson & Liles, Fort Madison, for appellant.

Michael M. Phelan, Johnson, Phelan & Tucker, Fort Madison, for appellee child.

Richard C. Turner, Atty. Gen., Stephen C. Robinson, Sp. Asst. Atty. Gen., and Stephen P. O'Meara, Asst. Atty. Gen., for appellee State of Iowa.

Heard by MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and McCOR-MICK, JJ.

REYNOLDSON, Justice.

Derrick Welcher, born August 20, 1972 was adjudicated a neglected and dependent child by order entered February 18, 1975. See § 232.2(14)(b), (d), The Code, 1975, amended Acts 66 G.A., Ch. 142 § 2(13)(f), (h). He was removed from the custody of his 25-year-old mother, LeAnn, and placed in a foster home. Her appeal was dismissed as untimely filed. June 4, 1975 LeAnn filed a petition for review which eventually was heard October 17, 1975. The magistrate, functioning as juvenile court, refused to return Derrick to LeAnn's custody, continued the matter for an indefinite period not to exceed one year during which the child would continue to be in the custody of the county department of social welfare, imposed stringent conditions to be met by the mother, and provided for further investigations and examinations. We reverse and remand with directions.

This case first came to the attention of welfare authorities following two drug overdose suicide attempts by LeAnn coupled with a hearsay report of child abuse. A "friend", Marilyn Ackerly, reported that on January 21, 1975 she saw LeAnn "hit" Derrick repeatedly in the mouth until it bled. The same report alleged the mother had kicked the child in the face two days before. But Martha Hatfield, social worker, saw Derrick the next day, January 22, 1975 and saw no abrasions. No testimony indicating any physical abuse was offered at either hearing. The child was dirty and the record reflects that although his mother loved him, her emotional problems led her to neglect his physical needs.

By the time the first hearing date arrived LeAnn's counsel, the attorney appointed for Derrick, and the county attorney were agreed the case should be continued or dismissed. Trial court overruled these motions and objections, adjudicated Derrick's status as neglected and dependent, invoked the protective supervision of Lee County Department of Social Welfare, placed him in a foster home, and ordered LeAnn to undergo a complete psychiatric examination by Dr. Pineda of Burlington, Iowa. Robert Galloway, eighth judicial district probation officer, was directed to make a background investigation. Galloway's investigation revealed LeAnn had an unfortunate and sordid childhood, a prior conviction and incarceration for insufficient fund checks, and bore two illegitimate children (the first when she was 16) before Derrick's birth. In the two prior instances she consented to severances of the parent-child relationships. No criminal activity was noted after 1970. The report filed by Galloway also contained

second and third-hand hearsay observations and notations from her social welfare records. These were the subject of objections at the October hearing.

Probation officer Galloway testified he could find no evidence LeAnn had abused Derrick but "perhaps" she had physically and "maybe" emotionally neglected him. He was in substantial agreement with Dr. Pineda that Derrick should be returned to LeAnn with strict supervision and a positive program for improvement of LeAnn's child care ability and job training skills.

From March to October LeAnn received psychiatric treatment from Dr. Pineda. He testified her mental health had improved and recommended Derrick be returned to his mother who should have supervision and continued psychiatric treatment. It was his opinion that although LeAnn was impulsive and at times exercised poor judgment, she would not neglect Derrick to the point of failing to provide his daily needs.

Ms. Hatfield was LeAnn's social worker. Her first report filed January 29, 1975 contained the statement "I feel Miss Welcher loves her child, however she has been so burdened with her own problems, that she has been unable to meet his needs both physically and emotionally." She recommended temporary custody be given to the department with the objective of working with LeAnn and eventually returning Derrick following LeAnn's psychiatric treatment.

At the October hearing Ms. Hatfield testified LeAnn's home prior to January 1975 was "adequate; at times, it was cluttered or messy, but not, you know, * * * alarmingly so." She had last been in the home in March when she took Derrick there for visitation. The home was then "clean and fine; it was neat." LeAnn cooked a good meal for Derrick.

The original juvenile court order permitted LeAnn visitation with her son in the foster home. Ms. Hatfield promptly intervened and the visitations were then conducted in the welfare offices which were unsuitable for that purpose. LeAnn resented this, quarreled with Ms. Hatfield and at one point threatened her. A second threat occurred when Ms. Hatfield accused LeAnn of "screwing around." Although the court concluded Ms. Hatfield was afraid of LeAnn and thus no subsequent investigation was made of LeAnn's living conditions, Ms. Hatfield testified she had no fear of LeAnn when she drove her to Burlington for appointments with Dr. Pineda.

At some period shortly before the October hearing Ms. Hatfield was of the opinion Derrick should be returned to LeAnn following the hearing. But at the hearing she vacillated, concluding the return should await a program "such as training" and "a little more supportive counseling." She could not assign a reason why such programs were not initiated in the eight months Derrick had been in the department's custody. She agreed another social worker should be assigned to this case.

At the same time, Ms. Hatfield testified concerning the visitations, "the reactions between Derrick and LeAnn were good * * * he was usually reluctant to leave her and usually cried until she got out of sight." She observed the visitations had gone well, LeAnn loved Derrick and behaved appropriately with him.

Appealing from the ruling following the October hearing, LeAnn asserts trial court erroneously relied on a social welfare record containing statements of third persons not available for cross-examination, made factual findings which had no support in the record, and reached the wrong result.

In a one-sentence filing here, counsel for the child joined in the brief and arguments filed by the State.

■■■ I. In this special proceeding our review is de novo. *In re Delaney*, 185 N.W.2d 726, 728 (Iowa 1971). The paramount consideration is the best interest of the child. *In Interest of Rice*, 236 N.W.2d 40, 43 (Iowa 1975). The presumption a child's best interests will be best served by leaving it with its parents is not conclusive. *In Interest of Osborn*, 220 N.W.2d 632, 634 (Iowa 1974); *In re McDonald*, 201 N.W.2d 447, 453 (Iowa 1972). It is the duty of the

State, as parens patriae, to see that every child within its borders receives proper care and treatment. *In re Morrison*, 259 Iowa 301, 311, 144 N.W.2d 97, 103 (1966).

■ Upon the initial hearing resulting in the adjudication of dependency and neglect the burden was plainly on the State to make the necessary showing by clear and convincing evidence. Section 232.31, The Code, see amendment, Acts 66 G.A., Ch. 142 § 5; *In Interest of Osborn*, supra, 220 N.W.2d at 634. The lack of direction in the review hearing raises issues relating to who has the burden of proof in such a proceeding and what that burden should be.

■ Obviously a review hearing should never be, as it developed here, a re-adjudication of the original neglect. If it were, a parent might never recover his or her child. Relevant here is the following general principle we approved in *In Interest of Freund*, 216 N.W.2d 366, 369 (Iowa 1974):

> "That a parent has once been guilty of misconduct or even child neglect, is not alone sufficient to deprive him of the custody of his child, where there is nothing to show he is not presently a fit and capable custodian for the child."

When a subsequent hearing involves a parent's efforts to regain custody in a dependency or neglect proceeding (now designated "child in need of assistance", see 66 G.A., Ch. 142) the proper issue should be whether there has been a change of circumstances since the original hearing which would warrant returning the child to the parent. This would allow the history of the parent to be considered as it bears on the likelihood of the parent having made the adjustments necessary for the child's return, but would not permit relitigation of the prior dependency or neglect determination.

■ As the necessary information is more often within the parent's reach, it should be the parent's burden to prove the change of circumstances. In view of recognized parental rights and the presumption above noted, this proof should not be imposed beyond a preponderance of the evidence. We approach this appeal with these principles in mind.

II. LeAnn's counsel objected to those portions of Galloway's report containing unverified entries of social workers from her welfare records in Mason City, her former residence. Her counsel made pre-trial application to the court to subpoena these and other persons whose hearsay reports or comments were injected into the hearing. All but one of these persons were beyond the court's ordinary subpoena power.

■ LeAnn carried her burden under *Delaney*, supra, 185 N.W.2d at 732–733, to show these several persons were unavailable and that she had advised the court a reasonable time before trial of the witnesses she wanted to have available for cross-examination. Her counsel's objections to their purported statements and reports should have been sustained, see *In re Scarlett*, 231 N.W.2d 8, 10 (Iowa 1975); *In re Meyer*, 204 N.W.2d 625, 627 (Iowa 1973), and this material had no place in trial court's factual findings.

Other findings of trial court are obviously based on that category of § 232.46 reports which we have said were unreliable and without probative value because based on "'hearsay, opinion, gossip, bias, prejudice, trends of hostile neighborhood feeling, the hopes and fears of social workers.'" *Orcutt v. State*, 173 N.W.2d 66, 74 (Iowa 1969), quoting from *Harter v. State*, 260 Iowa 605, 609, 149 N.W.2d 827, 829 (1967).

■ III. Still other factual references in trial court's rulings are unrelated to any evidence in the record before us. A decision so serious should not be reached on the basis of courthouse rumor or unsupported speculation.

■ At the October hearing the magistrate's unfortunate prejudice was quickly apparent when, undertaking to cross-examine the first witness, Dr. Pineda, the following exchange ensued:

> "THE COURT: Doctor, do you know, at the time you made your evaluation and your treatment of Ms. Welcher that the first report we got of this incident that she kicked and beat the boy until he bled at the mouth?

THE WITNESS: Yes, supposedly.

THE COURT: Yet, now you say give him back to her and let her work out on him and somebody check up on her every week, three weeks; just how much abuse can a child stand, Doctor?

THE WITNESS: Well, as far as I know, according to LeAnn and there is really, from the record, there is not really any proof that the child was really beaten that way. It's supposedly a report from a friend of hers, supposedly."

We have already noted the unsworn child abuse report was unsupported elsewhere and contradicted by trial testimony, as the witness unsuccessfully attempted to point out to the court.

Trial court's unjudicial approach to the issues was further demonstrated by one of the conditions he imposed on the return of the child to LeAnn: that she "secure such steady employment which will support herself and this minor child in cleanliness, warmth and the necessities of life; and that the mother open a savings account and save 20 percent of her earnings."

Upon remand this cause shall be assigned to a district court judge who shall thereafter continue to exercise jurisdiction over the issues and parties until final termination of this proceeding.

■ IV. While the ultimate outcome is by no means free from doubt, it is apparent to us Derrick should have been returned to LeAnn at the October hearing under appropriate safeguards. Upon remand the district court judge to whom this case is assigned shall hold a hearing to determine the present status and condition of the child and mother. Unless the situation has materially and adversely changed from that shown by the October 17, 1975 hearing, the court shall enter an order placing the child under the protective supervision of the Lee County Department of Social Welfare in LeAnn's home under appropriate conditions which will include the following:

1. LeAnn shall continue under Dr. Pineda's psychiatric treatment until he releases her. If Dr. Pineda is unavailable for this treatment, the court shall designate another psychiatrist.

2. The Lee County Department of Social Welfare shall be directed to render all necessary assistance to promptly place LeAnn in appropriate child care and vocational training classes. LeAnn shall be ordered to cooperate fully in these endeavors.

3. The Lee County Department of Social Welfare shall be directed to designate a social worker other than Ms. Hatfield to counsel and advise LeAnn.

4. The Lee County Department of Social Welfare shall be directed to make frequent visitations at the mother's home for the purposes of observing the quality of care given Derrick and providing any consultation deemed necessary.

We do not anticipate this mother can provide the superior home and stimulation Derrick has enjoyed in the foster home described in the record before us. But she must provide for her son's physical and emotional needs in a home in which there is a wholesome mental and moral atmosphere. *In Interest of Rice*, supra, 236 N.W.2d at 44; *In Interest of Kester*, 228 N.W.2d 107, 110 (Iowa 1975). If she should fail to do this despite the good-faith support of the welfare department, serious consideration must be given to a severance of the parent-child relationship. Derrick is now almost four years old. A decision involving his permanent home cannot be postponed indefinitely. Counsel may feel it advisable to direct LeAnn's attention to our language in *In Interest of Robbins*, 230 N.W.2d 489 (Iowa 1975); *In re Scarlett*, supra; and *In Interest of Kester*, supra.

REVERSED AND REMANDED WITH DIRECTIONS.