**In the Interest of A.Y.H., A Child.**

**R.J.H., III, Father, Appellant,**

**State of Iowa, Appellee.**

**No. 91–584.**

Supreme Court of Iowa.

April 15, 1992.

Gary D. McKenrick of Gomez, May, McKenrick & Kelly, Davenport, for appellant father.

Bobbi M. Alpers, Davenport, for mother.

Thomas H. Preacher, Bettendorf, guardian ad litem.

Bonnie J. Campbell, Atty. Gen. and Charles K. Phillips, Asst. Atty. Gen., for appellee State.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

We have granted further review of a court of appeals' decision to modify a dispositional order concerning A.Y.H. that found her to be a child in need of assistance. The juvenile court maintained custody of the child with the department of human services. This disposition was changed by the court of appeals which placed her in her father's custody under the supervision of the department of human services. The State asked for further review; appellant, R.J.H., seeks review conditioned on our granting the State's application. After further review, we now vacate the court of appeals decision and affirm the judgment of the juvenile court.

This case has proceeded under our juvenile justice chapter 232, specifically section 232.2(6) defining a child in need of assistance. Our review is statutory, section 232.-133, to examine the evidence de novo. *In re Blackledge,* 304 N.W.2d 209, 210 (Iowa 1981).

The record clearly establishes that A.Y.H. had been severely mistreated and was a child in need of assistance. She was born May 31, 1989, to her mother, C.D.H. and her father, R.J.H. A.Y.H. was removed from her mother's custody six months later after having lost twenty-five percent of her body weight in a three-week time span. She has remained in foster care continuously since then. A diagnosis of severe maternal neglect, severe failure to thrive and severe nutritional deprivation was made by the University of Iowa Hospital and Clinics. The child had extensive bruising, including a black eye. It was concluded that the child could not have been injured in this manner "on her own."

At the time of A.Y.H.'s removal and placement in foster care, appellant, R.J.H., her father, was incarcerated. This incarceration was the culmination of a long history of criminal activities involving, among other things, theft and three convictions of operating a motor vehicle while intoxicated.

While in prison, R.J.H. attempted to improve himself by participating in various programs, including parenting skills. However, he did not attempt to maintain contact with his daughter and did not contact the child's foster care worker while he was in prison.

R.J.H. was released from prison on January 30, 1991, and was placed on intensive supervision. On February 14, 1991, he filed a motion to terminate or modify the dispositional order and to have A.Y.H. placed with him.

On March 13, 1991, the State filed a petition to terminate R.J.H.'s parental rights. The petition was immediately stayed pending a child development clinic evaluation. On March 14, 1991, a hearing was held on the father's motion to modify or terminate the dispositional order. The testimony indicated that he had visited with his daughter three times since his release and acted appropriately during those visits. He had not, however, provided any history of providing care to the young child. Additionally, he resisted further evaluation at the child development clinic. He requested placement of the child with him despite the fact he was living with the child's mother who had abused her. It was essentially uncontested at the hearing that C.D.H., the mother, continued to present a danger mainly by disinterest in her daughter.

On March 19, 1991, the court denied the motion to modify or terminate the dispositional order and continued custody with the department. On April 11, 1991, the father filed a notice of appeal.

The issue at trial and on appeal is not whether A.Y.H. can safely be returned to

her mother's care alone, thus terminating the child in need of assistance determination. At the heart of this dispute is whether the father inherits his wife's shortcomings in asserting his claim to custody of his child. This is because R.J.H. proposes to maintain custodial care while residing with his wife, the child's mother. He states that he has made arrangements through his church for day care if he is unable to provide it due to employment or other reasons requiring him to leave the home. Of course, central to our determination of this matter is the best interest of the child involved. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981); Iowa R.App.P. 14(f)(15).

I. As a preliminary matter to the dispositional issue, appellant, R.J.H., joined by C.D.H., cross-applicant for further review purposes, raises a constitutional issue. The claim here is that requiring R.J.H. to prove by a preponderance of the evidence that the child cannot be safely returned violates his right to due process under the federal and state constitutions.

We have considered the question of burden of proof in termination of parental rights cases pursuant to Iowa Code chapter 600A (1991). *See In re Chad*, 318 N.W.2d 213 (Iowa 1982). In *Chad*, we held that in the termination of parental rights context, the burden of proof is on the State to show by clear and convincing proof that the child will suffer harm. Since that standard was not met in *Chad*, we reversed the order terminating the parent's parental rights.

In *In re Welcher*, 243 N.W.2d 841 (Iowa 1976), we reviewed the burden of proof question regarding a review hearing to determine if a child previously adjudicated to be in need of assistance could be returned to his mother. We noted that at the initial hearing that adjudicated the child in need of assistance, the burden was plainly on the State to make the necessary showing by clear and convincing evidence. Iowa Code § 232.96(9) (1991). *Welcher*, 243 N.W.2d at 844. Regarding the review hearing we said:

When a subsequent hearing involves a parent's efforts to regain custody in a dependency or neglect proceeding (now designated "child in need of assistance",

see 66 G.A., Ch. 142) the proper issue should be whether there has been a change of circumstances since the original hearing which would warrant returning the child to the parent. This would allow the history of the parent to be considered as it bears on the likelihood of the parent having made the adjustments necessary for the child's return, but would not permit relitigation of the prior dependency or neglect determination.

As the necessary information is more often within the parent's reach, it should be the parent's burden to prove the change of circumstances. In view of recognized parental rights and the presumption above noted, this proof should not be imposed beyond a preponderance of the evidence.

We reaffirmed the "preponderance of evidence standard" in *In re Blackledge*, 304 N.W.2d 209, 214 (Iowa 1981).

R.J.H. argues that the same standard of proof should be required at the review hearing as at the initial hearing that adjudicated the child in need of assistance and at a hearing involving termination of parental rights. *See* Iowa Code §§ 232.96(2) and 232.116. Thus, the child would be returned to the custody of the parents, on review, unless the State could show by clear and convincing evidence that the child will suffer harm as specified by statute if returned to the parents. R.J.H. claims that a standard less stringent than that is unconstitutional.

Our current statute, Iowa Code § 232.-102(8), states: "The placement shall be terminated and the child returned to the child's home if the court finds by a preponderance of the evidence that the child will not suffer harm in the manner specified in section 232.2, subsection 6." We reasoned in *Welcher*, that the burden here is properly on the parents because the necessary information is more often within the parent's reach.

It is axiomatic that the due process clause is invoked only when an individual faces the prospect of being deprived of "life, liberty, or property." U.S. Const.

amend. XIV, § 1; Iowa Const. art. I, § 9. In *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the United States Supreme Court recognized that a termination-of-parental-rights proceeding has the potential to deprive parents of their "fundamental liberty interest ... in the care, custody, and management of their child" and, therefore, implicates the due process clause of the fourteenth amendment. *Santosky*, 455 U.S. at 753, 102 S.Ct. at 1394–95, 71 L.Ed.2d at 606.

■ The *Santosky* court utilized a three-part analysis to conclude that the due process clause requires the State to support its allegations in a parental rights termination proceeding by clear and convincing evidence. *Santosky*, 455 U.S. at 747–48, 102 S.Ct. at 1391–92, 71 L.Ed.2d at 603. We now conclude that this same analysis supports placing the burden of proof on a petitioning parent in a review hearing, who must demonstrate by a preponderance of the evidence that the child, if returned, would not suffer adjudicatory harm as defined in Iowa Code section 232.-2(6).

The three factors considered in *Santosky* are: "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interests supporting use of the challenged procedure." *Id.* at 754, 102 S.Ct. at 1395, 71 L.Ed.2d at 607.

■ As to the first factor, although we appreciate the parents' heartfelt interest in regaining custody of the child, their interest in a modification hearing is not as compelling as would be the case in a termination proceeding. A modification proceeding does not result in a final severance of the parental bond. Moreover, unlike a termination proceeding, the action taken in the modification proceeding is not irreversible; the parent may at a later date renew a request for modification. As a consequence, we conclude that the "private interest affected" is less weighty than in a termination proceeding. *Id.* at 758–59, 102 S.Ct. at 1397–98, 71 L.Ed.2d at 609–10.

■ The next factor to consider involves the risk of an erroneous deprivation of the parent's interest resulting from the use of a preponderance of the evidence standard; more specifically, we must ask if the "preponderance standard fairly allocates the risk of an erroneous fact finding" between the State and the petitioning parent. *Id.* at 761, 102 S.Ct. at 1399, 71 L.Ed.2d at 612. As we noted in *Welcher*, the necessary information—*i.e.*, those facts which bear on the likelihood of the parent having made the adjustments necessary for the child's return—is more often within the parent's reach. *Welcher*, 243 N.W.2d at 844. Accordingly, we conclude the placing of the burden of proof on the petitioning parent best minimizes the risk of an erroneous deprivation.

The final factor calls upon the court to examine the State interests involved in the modification proceeding. *Id.* at 766–68, 102 S.Ct. at 1401–02, 71 L.Ed.2d at 615–16. As in the parental rights termination proceeding, the State has two interests at stake: "a *parens patriae* interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings." *Id.* These factors are well served by placing the burden on the petitioning parent. Parents are not only the most accurate source of the relevant data, they are also the least-cost provider of that information.

In sum, we conclude that the burden of proof as articulated in *Welcher* and *Blackledge* comports with the dictates of procedural due process.

■ II. In the review hearing, the juvenile court found that the record made by R.J.H. did not support a return of A.Y.H. to his custody. The court observed that for some reason the child never had a place in her mother's heart or affection. Even with the expenditure of considerable time and money by the department of human services, she has never exhibited a commitment to the child.

Regarding R.J.H.'s parenting skills, the juvenile court stated as follows:

And I don't know where this case is going to go because I don't know if this

man can maintain sobriety or keep his mitts off other people's property. He hasn't been able to do that for the last six, eight years. So I don't know whether we are—whether we are setting this child up for repeated failures or not.

We recognize, as did the juvenile court, the efforts of R.J.H. to provide suitable care for the child that would be independent of her mother. The problem with a court's relying on this resolution is that there is no history shown that this would be workable as a safeguard for A.Y.H. *Cf. In re W.G.*, 349 N.W.2d 487, 492 (Iowa 1984). At best, it would likely result in periods of time when A.Y.H. was left in the sole care of her mother, who on this record, cannot be found to be a responsible caretaker. Further, R.J.H. is not able to provide any history of responsible care of his daughter by himself. Nor are we able to say that adequate protection for A.Y.H. is provided by the protective authority of the court under section 232.82. That section authorizes the removal of a physical abuser from the child's residence. We find that an after-the-fact remedy by the court is not the appropriate protection needed by A.Y.H. at this time.

The burden of proof to justify termination of the placement of A.Y.H. and return of custody to R.J.H. has not been met.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.