IN THE MATTER OF ELISHA MCCAULEY.

Suffolk. October 3, 1990. - January 15, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Parent and Child*, Consent to medical treatment. *Minor*, Medical treatment. *Medicine*, Withholding medical treatment. *Constitutional Law*, Freedom of religion, Parent and child. *Religion.*

In the circumstances of a case in which a hospital sought judicial authorization to give life-saving blood transfusions to a child whose parents refused to consent to such treatment on religious grounds, the judge properly determined that the interests of the child and the State's interests in the protection of the child's welfare and in the preservation of the child's life outweighed the parents' parental and religious rights. [136-139]

CIVIL ACTION commenced in the Superior Court Department on July 20, 1989.

The case was heard by *Robert H. Bohn, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jonathan Brant* for Elisha McCauley & others.

*Stuart J. Novick* for Children's Hospital Corporation.

LIACOS, C.J. A Superior Court judge authorized the physicians at Children's Hospital in Boston (hospital) to give blood transfusions to Elisha McCauley. Her parents, practicing Jehovah's Witnesses, appealed. We transferred the case to this court on our own motion. They argue that the judge's order was unconstitutional because it violated their parental and religious rights.

The facts as we have them are these. On the morning of July 19, 1989, Michael and Zelia McCauley brought their eight year old daughter, Elisha, to Leonard Morse Hospital. After a series of tests, the physicians there made an initial

diagnosis of leukemia. They referred Elisha and her parents to the hospital. Laboratory tests performed at the hospital disclosed a hematocrit reading (percentage of red blood cells to whole blood) of 14.5%. A normal hematocrit for a young child is approximately 40%. Further laboratory tests disclosed the presence of probable lymphoblasts, consistent with the initial diagnosis of leukemia. In order to determine with greater certainty whether Elisha had leukemia, and, if so, which type, the physicians needed to perform a bone marrow aspiration. The physicians were unwilling to perform the aspiration, however, without raising Elisha's hematocrit to within a safe clinical range, thus eliminating the risk to Elisha of developing congestive heart failure. The only treatment available to raise Elisha's hematocrit was the administration of red blood cells through a blood transfusion. If the physicians determined that Elisha had leukemia, the treatment would involve chemotherapy in conjunction with multiple blood transfusions.

Michael and Zelia McCauley are Jehovah's Witnesses. They were baptized as such over fifteen years ago; they attend religious services three days a week. A principal tenet of their religion is a belief, based on interpretations of the Bible, that the act of receiving blood or blood products precludes an individual from resurrection and everlasting life after death. Consistent with their religious beliefs, Michael and Zelia refused to consent to the administration of blood or blood products to Elisha.[1]

During the evening of July 19, 1989, representatives of the hospital sought authority from a judge participating in the emergency judicial response system to permit the administration of blood or blood products to Elisha. A Superior Court judge held a hearing during the early morning hours of July 20, at which two physicians, the father, Michael McCauley, and a minister and city overseer of the Boston Kingdom Hall

---

[1] The McCauleys only object to the administration of blood or blood products. They do not object to any other medical procedures involved in treating leukemia.

of Jehovah's Witnesses testified. The judge then issued a temporary order authorizing the administration of blood or blood products to Elisha. On July 26, the judge issued an order authorizing the hospital and its medical staff to "provide all reasonable medical care which in their judgment is necessary to preserve the patient's life and health, including but not limited to the administration of blood and/or blood products, throughout the entire course of her treatment for leukemia and related conditions."

We are faced with the difficult issue of when a State may order medical treatment for a dangerously ill child over the religious objections of the parents.[2] We faced a similar controversy in *Custody of a Minor*, 375 Mass. 733 (1978). In that case, the parents argued that they had a constitutional right as parents to refuse medical treatment for their child. We noted that there are three interests involved: (1) the "natural rights" of parents; (2) the interests of the child; and (3) the interests of the State. *Id.* at 747. We conclude that the interests of Elisha and of the State outweigh her parents' rights to refuse the medical treatment.

Courts have recognized that the relationship between parents and their children is constitutionally protected, and, therefore, that the private realm of family life must be protected from unwarranted State interference. See *Quilloin* v. *Walcott*, 434 U.S. 246, 255 (1978); *Smith* v. *Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 842 (1977). *Custody of a Minor*, *supra* at 748. " 'The rights to conceive and to raise one's children' are 'essential . . . basic civil rights . . . .' The interest of parents in their relationship with their children has been deemed fundamental, and is constitutionally protected." (Citation omitted.) *Department*

---

[2]The hospital does not raise the issue of mootness. It is not clear from the record whether Elisha is still receiving blood transfusions. Even if the issue is moot, however, we proceed to address the merits because of the importance of the issue and because it is capable of repetition while evading review. See *Norwood Hosp.* v. *Munoz*, *ante* 121 (1991). See also *Globe Newspaper Co.* v. *Chief Medical Examiner*, 404 Mass. 132, 134 (1989).

*of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 3 (1979), quoting *Stanley* v. *Illinois*, 405 U.S. 645, 651 (1972). Parents, however, do not have unlimited rights to make decisions for their children. Parental rights "do not clothe parents with life and death authority over their children." *Custody of a Minor*, *supra*. See *Prince* v. *Massachusetts*, 321 U.S. 158, 166 - 167 (1944). The State, acting as parens patriae, may protect the well-being of children. *Id.*

The right to the free exercise of religion, including the interests of parents in the religious upbringing of their children is, of course, a fundamental right protected by the Constitution. *Wisconsin* v. *Yoder*, 406 U.S. 205, 214 (1972). See *Cantwell* v. *Connecticut*, 310 U.S. 296, 303 (1940). See also *United States* v. *Ballard*, 322 U.S. 78, 86 (1944). However, these fundamental principles do not warrant the view that parents have an absolute right to refuse medical treatment for their children on religious grounds. See *Prince* v. *Massachusetts*, *supra*. See also *Jacobson* v. *Massachusetts*, 197 U.S. 11, 26-27 (1905).

The State's interest in protecting the well-being of children "is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience. . . . The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Prince*, *supra* at 166-167. "[T]he power of the parent, even when linked to a free exercise claim, may be subject to limitation under *Prince* if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens." *Wisconsin* v. *Yoder*, *supra* at 233-234. When a child's life is at issue, "it is not the rights of the parents that are chiefly to be considered. The first and paramount duty is to consult the welfare of the child." *Custody of a Minor*, *supra* at 749, quoting *Purinton* v. *Jamrock*, 195 Mass. 187, 199 (1907).

The Superior Court judge found that, "[w]ithout chemotherapy and blood transfusions, Elisha faces certain death." In determining a child's interests when his parents refuse to

consent to medical treatment, we apply the "best interests" test. *Custody of a Minor, supra* at 753.

The judge found five factors in support of the administration of blood and blood products: (1) the child's age; (2) the risk to the child's health and life if the requested treatment was not ordered; (3) the real probability that the child's illness would be in remission if she were given the requested treatment, including the treatment of her dangerously low hematocrit and her leukemia; (4) the substantial chance for a cure and a normal life for the child if she underwent the recommended treatment; and (5) the minimal risks to the child's health which would result from the treatment, including from the administration of blood and blood products. The factors weighing against treatment were the "sincerely held religious beliefs of the patient's mother and father and, to the degree to which an 8-year old is capable, her religious beliefs as well." The judge did not err in concluding that the administration of blood and blood products was in Elisha's best interests.

The State has three interests in having a dangerously sick child receive medical treatment over her parents' religious objections. First, the State has an interest in protecting the welfare of children within its borders. *Prince* v. *Massachusetts, supra.* "Where, as here, the child's very life is threatened by a parental decision refusing medical treatment, this State interest clearly supersedes parental prerogatives." *Custody of a Minor, supra* at 755. Second, the State has an interest in the preservation of life, especially when the affliction is curable. *Brophy* v. *New England Sinai Hosp., Inc.*, 398 Mass. 417, 433 (1986). *Custody of a Minor, supra. Superintendent of Belchertown State School* v. *Saikewicz*, 373 Mass. 728, 741-742 (1977). Finally, the medical profession is trained to preserve life, and to care for those under its control. The State has an interest in maintaining the ethical integrity of the medical profession. See *Saikewicz, supra* at 743; *Custody of a Minor, supra.*

In this case, the judge found that, "[w]ithout chemotherapy and blood transfusions, Elisha faces certain death. With

chemotherapy and blood transfusions she will have a now unspecified chance to bring her leukemia into remission. Elisha's likelihood of recovery will not be known until her physicians are able to determine through conducting further tests the type of leukemia she has developed." Since the judge found that the medical treatment, including the administration of blood and blood products, was Elisha's only real chance of recovery, the State's interests in the protection of the child's welfare and in preservation of her life apply.[3]

We conclude that Elisha's best interests, and the interests of the State, outweigh the McCauleys' parental and religious rights.[4] We do not in any way doubt the sincerity of the McCauleys' religious beliefs or their love for Elisha. Nor do we retrench from our prior holdings that freedom of religion occupies a "preferred position . . . in the pantheon of constitutional rights." *Madsen* v. *Erwin*, 395 Mass. 715, 724 (1985). Nevertheless, the judge was well warranted in finding that, if Elisha had not received the blood transfusions, she would have died. In these circumstances her best interests and welfare, coupled with the strong interests of the State, must outweigh her parents' objections to the blood transfusions.

*Judgment affirmed.*

---

[3]While we conclude that the State has an interest in preserving Elisha's life, "we do not decide here that this interest invariably must control in every case where State intervention is sought to order life-saving medical treatment." *Custody of a Minor, supra* at 755 n.12. See *Norwood Hosp.* v. *Munoz, supra.*

[4]We note that most courts dealing with similar issues have concluded that religious objections of a child's parents will not preclude a judicial order requiring medical intervention to treat a seriously ill child. See, e.g., *Jehovah's Witnesses in Wash.* v. *King County Hosp. Unit No. 1,* 278 F. Supp. 488, 505 (W.D. Wash. 1967), aff'd, 390 U.S. 598 (1968); *In re D.L.E.* 645 P.2d 271, 275-276 (Colo. 1982); *People ex rel. Wallace* v. *Labrenz,* 411 Ill. 618, 625-626, cert. denied, 344 U.S. 824 (1952); *State* v. *Perricone,* 37 N.J. 463, 472-474, cert. denied, 371 U.S. 890 (1962). See also cases collected at Annot., 52 A.L.R.3d 1118 (1973 & Supp. 1990).