## IIN THE MATTER OF RENA.

No. 99-P-199.

Berkshire. February 3, 1999. - February 16, 1999.

Present: JACOBS, SMITH, & PORADA, JJ.

*Medicine,* Withholding medical treatment. *Religion. Parent and Child,* Consent to medical treatment. *Minor,* Medical treatment. *Moot Question. Practice, Civil,* Moot case.

In a declaratory judgment action brought by a hospital, seeking permission to administer a blood transfusion to a minor who refused such treatment on religious grounds, a Superior Court judge, in weighing the interests of the minor, her parents, and the State, erred in making no determination as to the minor's maturity to make an informed decision, where the minor was nearly eighteen years old and had the capacity to testify; however, where the minor was discharged from the hospital during the pendency of the appeal, the order of the Superior Court was vacated as moot. [336-338]

CIVIL ACTION commenced in the Superior Court Department on January 26, 1999.

The case was heard by *Judd J. Carhart,* J.

*Richard A. Simons* for the minor.

*Benjamin Smith* for Berkshire Medical Center.

PORADA, J. When a seventeen year old patient, Rena,[1] and her parents, who are members of the Jehovah's Witnesses, refused to allow physicians at the Berkshire Medical Center (hospital) to administer a blood transfusion to Rena, the hospital sought an order in the Superior Court seeking permission to do so. After a hearing, a Superior Court judge issued a temporary order permitting the hospital to administer a blood transfusion to Rena in the event that "a life-threatening traumatic event" occurred in the course of her treatment. At a subsequent hearing, the judge entered a final order granting the same relief. Rena appeals from the final order. We vacate the order for the reasons stated.

---

[1]We use a pseudonym.

The facts are not in dispute. Rena was born on October 10, 1981. She is a junior in high school. Since she was ten years old, she has been a Jehovah's Witness. A principal tenet of her religion is that the act of receiving blood precludes an individual from resurrection and everlasting life after death. Consistent with this belief, she has periodically executed a written medical directive declaring that she will not assent to a blood transfusion and last executed such a directive on January 12, 1999. She understands that her refusal may well result in her death in the event of a life-threatening event.

On January 26, 1999, Rena lacerated her spleen in a snowboarding accident and was brought into the hospital's emergency room. Upon examination, it was determined that in order to keep her blood count at a stable level a blood transfusion might become necessary to keep Rena alive. Both the patient and her parents indicated that they would not consent to a blood transfusion. The hospital then filed a complaint for declaratory relief in the Superior Court seeking authority to administer a blood transfusion if the same became necessary to treat her injury. At a hearing, the hospital presented medical evidence that there was a potential need for this authority in the event a blood clot broke loose from the spleen laceration, which might result in a massive hemorrhage, which in turn might require a blood transfusion to sustain her life. At this hearing, the wishes of the parents and those of Rena through her attorney were made known to the judge. Based on the best interests of Rena and the State's interest in the preservation of life and protection of the welfare of a minor, the judge, as previously recited, entered a temporary order allowing Rena's physicians to administer a blood transfusion in the event of a life-threatening, traumatic event. At a subsequent hearing, the judge entered a final order authorizing the hospital "to administer a blood transfusion to [Rena] in the event that a life-threatening, traumatic event occurs during her treatment that requires, in the medical opinion of her treating physicians, the administration of a blood transfusion." A petition for interlocutory review of this order was filed on her behalf with a single justice of this court. The single justice recognized that the order was not interlocutory but final in its nature. She therefore authorized the filing of an appeal to be heard on an expedited basis on the original record.

The sole issue in this case is whether the judge erred in concluding that the best interests of an unemancipated minor

and the State's interest in the protection of a child's welfare and in the preservation of a child's life mandated judicial authorization for administering a blood transfusion to Rena, if, in the opinion of her physicians, a life-threatening event occurred in the course of her treatment. Rena argues that the judge committed error in failing to consider her maturity to make an informed decision in determining her best interests.

The law is well settled in this Commonwealth that a competent adult may refuse medical treatment even if the treatment is necessary to save her life. *Norwood Hosp.* v. *Munoz*, 409 Mass. 116, 122-123 (1991). The law is also clear that when parents refuse medical treatment necessary for the preservation of an unemancipated child's life, a court may authorize the treatment to be administered after weighing the child's best interests, the parents' interests, and the State's interests.[2] *Matter of McCauley*, 409 Mass. 134, 136 (1991), citing *Custody of a Minor*, 375 Mass. 733 (1978). The best interests of a child are determined by applying the same criteria applicable in substituted judgment cases, namely (1) the patient's expressed preferences, if any; (2) the patient's religious convictions, if any; (3) the impact on the patient's family; (4) the probability of adverse side effects from the treatment; (5) the prognosis without treatment; and (6) the present and future incompetency of the patient in making that decision. *Care & Protection of Beth*, 412 Mass. 188, 195 & n.11 (1992). In assessing the child's expressed preference, religious convictions, and present and future incompetency, it is appropriate for a judge to consider the maturity of the child to make an informed choice.[3]

Although the judge did consider Rena's wishes and her

---

[2]The Illinois Supreme Court has determined that the test that should be applied in circumstances such as this is whether the minor is mature enough to make an informed decision. *In re E.G.*, 133 Ill. 2d 98, 110-112 (1989). This concept has been adopted by our Legislature in allowing a judge to authorize a minor to have an abortion without parental consent if the judge determines that the minor is mature enough to make an informed decision. G. L. c. 112, § 12S. See *In re Swan*, 569 A.2d 1202 (Me. 1990), in which the Maine Supreme Judicial Court rejected a substituted judgment test in favor of giving preference to the wishes of a minor if the minor has the capacity to weigh the risks and benefits involved.

[3]We recognize that our laws provide no bright line as to when a minor reaches an age to make certain decisions in life. In criminal proceedings a seventeen year old is deemed capable of making all decisions relative to that proceeding. An emancipated minor may consent to his or her own medical treatment, excluding an abortion or sterilization, and a minor who is married,

religious convictions in this matter, he made no determination as to her maturity to make an informed choice. While recognizing and appreciating the obvious conscientiousness of the judge throughout this proceeding, we think this was error particularly in the circumstances of this case where Rena will soon attain the age of eighteen. In addition, in assessing Rena's preferences and religious convictions, he should not have relied solely on the representations made by her attorney and her parents but should have heard Rena's own testimony on these issues where she apparently had the testimonial capacity to answer questions. Only after evaluating this evidence in light of her maturity could the judge properly determine her best interests.

Because the Supreme Judicial Court has not decided that the State's interest in preserving a child's life will invariably control in every case where State intervention is sought for life-saving measures, see *Matter of McCauley*, 409 Mass. at 139 n.3; *Care & Protection of Beth*, 412 Mass. at 198, we ordinarily would remand this case to the Superior Court for an expedited hearing to determine the best interests of the child in light of this opinion and to reassess the three-part balancing test of Rena's best interests, the rights of her parents, and the interests of the State. The hospital has informed us, however, that on the day after the presentation of oral argument in this case, Rena was discharged from the hospital. Consequently, there no longer appears to be an immediate need for the hospital's authorization or judicial intervention in this matter. We, therefore, vacate the final order, not on the merits, but because it has become moot.

*So ordered.*

---

divorced, or widowed may likewise consent to his or her medical treatment, including an abortion and sterilization. G. L. c. 112, § 12F. On the other hand, a minor may not purchase cigarettes (G. L. c. 64C, § 10) or alcohol (G. L. c. 138, §§ 34 & 34A); may not vote (G. L. c. 51, § 1); and may not serve on a jury (G. L. c. 234, § 1).