******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROGERS, C. J., with whom PALMER, EVELEIGH, ESPINOSA and VERTEFEUILLE, Js., join, concurring. In her original brief to this court, the petitioner, the Commissioner of Children and Families, claimed that General Statutes §§ 17a-10 (c)[1] and 17a-1 (12)[2] authorized the Department of Children and Families to vaccinate children in the petitioner's temporary custody over the objection of the children's parents. After the original opinion in this case was released, the petitioner filed a motion for reconsideration in which she raised several new arguments, including that General Statutes §§ 17a-93 (4),[3] 17a-98,[4] and 46b-129 (j) (4)[5] confer on her full guardianship over children committed to her temporary custody pursuant to Chapter 319a of the General Statutes governing child welfare. I agree and join with the majority that it would be inappropriate to consider the petitioner's new statutory claims at this late date. Accordingly, I express no opinion as to whether §§ 17a-93 (4), 17a-98 and 46b-129 (j) (4) were intended to confer on the petitioner full guardianship rights over children in her temporary custody, including the authority to authorize any and all medical treatment for those children over the objection of their parents.

I write separately, however, to emphasize that, if the petitioner's interpretation of these statutes were correct, I would have grave doubts about their constitutionality as applied in these circumstances. See *Santosky* v. *Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the [s]tate. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life."); see also *Diana H.* v. *Rubin*, 217 Ariz. 131, 136, 171 P.3d 200 (App. 2007) (under federal constitutional due process principles, when parents object to vaccination of child in temporary custody of state, "state must demonstrate a compelling interest to justify overriding the combination of religious and parental rights involved"); *In re G.K.*, 993 A.2d 558, 566 (D.C. App. 2010) (under statute defining "residual parental rights," parents retained right to consent to certain medical treatment for child in legal custody of state); *In the Mattter of Lyle A.*, 14 Misc. 3d 842, 850, 830 N.Y.S.2d 486 (2006) (implicit in routine procedures used by Department of Human Services was that "[a] parent whose child is in foster care has the right to make the decision regarding whether or not his or her child will be given psychotropic drugs"); *In the Matter of Martin F.*, 13 Misc. 3d 659, 676, 820 N.Y.S.2d 759 (2006) (if parent of child in temporary foster care opposes admin-

istration of mental health medicine it cannot lawfully be prescribed unless court determines "whether the proposed treatment [by medication] is narrowly tailored to give substantive effect to the [child] patient's liberty interest"); *In re Guardianship of Stein*, 105 Ohio St. 3d 30, 35–36, 821 N.E.2d 1008 (2004) ("the decision to withdraw life-supporting treatments goes beyond the scope of making medical decisions," and, therefore, "[t]he right to withdraw life-supporting treatment for a child remains with the child's parents until the parents' rights are permanently terminated"); but see *In re Deng*, 314 Mich. App. 615, 626–27, 887 N.W.2d 445 (because determination of unfitness "so breaks the mutual due process liberty interests as to justify interference with the parent-child relationship," state could vaccinate children in temporary custody over objection of parents pursuant to statute allowing parents to opt out based on religious objections [internal quotation marks omitted]), appeal denied, 500 Mich. 860, 884 N.W.2d 580 (2016). In my view, when the petitioner has only temporary custody over a child and the rights of the parents have not been terminated, the parental right to make decisions for the child, the child's interest in continuing good health and the state's parens patriae interest in protecting the well-being of the child must be balanced. See *In the Matter of McCauley*, 409 Mass. 134, 136–37, 139, 565 N.E.2d 411 (1991).[6]

Under the assumption that this balancing test is constitutionally required, I also believe that, with respect to the narrow question of whether the petitioner has the right to authorize the vaccination of children in her temporary custody, our legislature has already concluded as a matter of public policy that the interest of parents in opting not to vaccinate their children on religious grounds outweighs the child's interest in being immune from certain diseases and the state's parens patriae interest in ensuring the well-being of the child and the public at large. See General Statutes § 10-204a (a) ("[a]ny such child who . . . presents a statement from the parents or guardian of such child that such immunization would be contrary to the religious beliefs of such child . . . shall be exempt from [certain immunizations required for attending school]"). I can see no reason why this policy determination would not be binding on the petitioner and the courts. Therefore, I find it highly unlikely that the petitioner would have the right to vaccinate a child in her temporary custody over of the objection of the parents, and I concur in the granting of the motion for reconsideration, but the denial of the relief requested therein.

[1] General Statutes § 17a-10 (c) provides: "When deemed in the best interests of a child in the custody of the commissioner, the commissioner, the commissioner's designee, a superintendent or assistant superintendent or, when the child is in transit between [Department of Children and Families] facilities, a designee of the commissioner, may authorize, on the advice of a physician licensed to practice in the state, medical treatment, including surgery, to insure the continued good health or life of the child. Any of said persons may, when he or she deems it in the best interests of the child,

authorize, on the advice of a dentist licensed to practice in the state, dentistry, including dental surgery, to insure the continued good health of the child. Upon such authorization, the commissioner shall exercise due diligence to inform the parents or guardian prior to taking such action, and in all cases shall send notice to the parents or guardian by letter to their last-known address informing them of the actions taken, of their necessity and of the outcome, but in a case where the commissioner fails to notify, such failure will not affect the validity of the authorization.”

[2] General Statutes § 17a-1 (12) (B) defines “ ‘[g]uardian’ ” in relevant part as “a person who has a judicially created relationship between a child or youth and such person that is intended to be permanent and self-sustaining as evidenced by the transfer to such person of the following parental rights with respect to the child or youth . . . the authority to make major decisions affecting the child’s or youth’s welfare, including, but not limited to . . . major medical, psychiatric or surgical treatment . . . .”

[3] General Statutes § 17a-93 (4) defines “ ‘[g]uardianship’ ” in relevant part to mean “the obligation of care and control, the right to custody and the duty and authority to make major decisions affecting such minor’s welfare, including, but not limited to . . . major medical, psychiatric or surgical treatment . . . .”

[4] General Statutes § 17a-98 provides in relevant part that the petitioner “shall exercise careful supervision of each child under [her] guardianship or care and shall maintain such contact with the child and the child’s foster family as is necessary to promote the child’s safety and physical, educational, moral and emotional development . . . .”

[5] General Statutes § 46b-129 (j) (4) provides in relevant part: “The [petitioner] shall be the guardian of [a] child [committed to her custody] for the duration of the commitment . . . .”

[6] The court stated in *In the Matter of McCauley*: “We are faced with the difficult issue of when a [s]tate may order medical treatment for a dangerously ill child over the religious objections of the parents. . . . [T]here are three interests involved: (1) the natural rights of parents; (2) the interests of the child; and (3) the interests of the [s]tate. . . .

“Courts have recognized that the relationship between parents and their children is constitutionally protected, and, therefore, that the private realm of family life must be protected from unwarranted [s]tate interference. . . . The rights to conceive and to raise one’s children are essential . . . basic civil rights . . . . The interest of parents in their relationship with their children has been deemed fundamental, and is constitutionally protected. . . . Parents, however, do not have unlimited rights to make decisions for their children. Parental rights do not clothe parents with life and death authority over their children. . . . The [s]tate, acting as parens patriae, may protect the well-being of children. . . .

“The right to the free exercise of religion, including the interests of parents in the religious upbringing of their children is, of course, a fundamental right protected by the [federal] [c]onstitution. . . . However, these fundamental principles do not warrant the view that parents have an absolute right to refuse medical treatment for their children on religious grounds. . . .

“The [s]tate’s interest in protecting the well-being of children is not nullified merely because the parent grounds his claim to control the child’s course of conduct on religion or conscience. . . . The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death. . . . [T]he power of the parent, even when linked to a free exercise claim, may be subject to limitation . . . if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens. . . . When a child’s life is at issue, it is not the rights of the parents that are chiefly to be considered. The first and paramount duty is to consult the welfare of the child.” (Citations omitted; footnote omitted; internal quotation marks omitted.) *In the Matter of McCauley*, supra, 409 Mass. 136–37.