******************************************************************

The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

# IN RE NAOMI W.*
## (AC 44413)

Elgo, Suarez and Devlin, Js.

*Syllabus*

The respondent mother appealed to this court, challenging the order of the
trial court that permitted her minor child, N, to undergo a nonemergency
surgical procedure, despite the mother's objection to it on religious
grounds. The mother claimed that the trial court violated her constitu-
tional right to direct the health care decisions and religious upbringing
of N. After N had been adjudicated uncared for and committed to the
care and custody of the Commissioner of Children and Families, she
was examined by a physician in 2017 who strongly recommended that
she have the surgery. In February, 2020, N's attorney filed a motion on
her behalf, seeking the trial court's authorization for the surgery, which
the commissioner joined. N, who was seventeen years old at the time,
sought to expedite the surgery and to complete her recovery before she
entered college. Although a hearing on N's motion had been scheduled
for February, 2020, the motion was not heard until October, 2020, in
part because of the COVID-19 pandemic. The trial court determined that
it was in N's best interest that the court grant the motion, and the surgery
was scheduled for January 13, 2021. While her appeal was pending, the
mother filed a motion to stay the trial court's order, which the court
denied after a hearing on January 4, 2021. This court then considered
the mother's emergency motion for expedited review of the trial court's
order but denied the relief requested on January 11, 2021, stating that
there was then no stay that would prevent the surgery from going
forward. After N underwent the surgery on January 13, 2021, the commis-
sioner filed a motion with this court to dismiss the mother's appeal on
the ground that it was moot. This court denied the motion without
prejudice to the parties' addressing the mootness issue in their briefs.
On appeal, the mother claimed that, although this court could grant her
no practical relief, her appeal came within the exception to the mootness
doctrine of *Loisel* v. *Rowe* (233 Conn. 370) for claims that are capable
of repetition yet evade review. *Held* that the respondent mother's appeal
was dismissed as moot, there being no practical relief that could be
afforded to her: the mother could not satisfy the requirement of *Loisel*
that the challenged action of the trial court, or the effect of the challenged
action, by its very nature was of a limited duration such that there
was a strong likelihood that the substantial majority of cases raising a
question about its validity would become moot before appellate litigation
could be concluded, as appellate rules provide wide-ranging authority
to expedite the appellate process, and it was unlikely that the majority
of cases involving parental objection to a necessary but nonemergency
medical procedure would encounter a delay in requesting court involve-
ment, a delay of almost nine months before adjudication and a desire
to expedite the procedure on the basis of educational plans; moreover,
notwithstanding the mother's contention that all medical treatment dis-
putes are inherently time limited such that they would always escape
appellate review, such review has been conducted in scores of cases
without resort to the capable of repetition yet evading review exception
to the mootness doctrine.

Argued May 27—officially released July 22, 2021*

*Procedural History*

Petition by the Commissioner of Children of Families
to adjudicate the respondents' minor child neglected
and uncared for, brought to the Superior Court in the
judicial district of New Haven, Juvenile Matters, and
tried to the court, *Marcus, J.*; judgment adjudicating
the minor child uncared for and committing the minor
child to the custody of the petitioner; thereafter, the

court granted the minor child's motion for authorization of a certain medical procedure, and the respondent mother appealed to this court; subsequently, the court, *Marcus, J.*, denied the respondent mother's motion for a stay; thereafter, this court granted the respondent mother's motion for review and denied the relief requested; subsequently, this court denied without prejudice the petitioner's motion to dismiss the appeal. *Appeal dismissed.*

*Benjamin M. Wattenmaker*, for the appellant (respondent mother).

*Evan O'Roark*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Clare E. Kindall*, solicitor general, and *Sara Nadim*, assistant attorney general, for the appellee (petitioner).

*Opinion*

DEVLIN, J. This case concerns the efforts of Naomi W. (Naomi), a child in the custody of the petitioner, the Commissioner of Children of Families (commissioner), to undergo a surgical procedure to correct severe curvature of her spine. Following a hearing, the trial court authorized the surgery, and the respondent mother (respondent), who objected to the surgery, filed the present appeal. On appeal, she claims, for the first time, that the trial court violated her fundamental right to direct the health care decisions and religious upbringing of her child by allowing the commissioner to consent to Naomi's nonemergency surgery over the respondent's religious objection. The respondent unsuccessfully sought a stay of the trial court's order, and the commissioner reported that, on January 13, 2021, Naomi successfully underwent the surgery. Because this court can no longer grant any practical relief to the parties and the case does not meet the criteria for the "capable of repetition, yet evading review" exception to the mootness doctrine, we dismiss the appeal as moot.

The record reflects the following factual and procedural history. On August 9, 2017, a motion for an order of temporary custody was granted, and Naomi was placed in the temporary custody of the commissioner. Subsequently, on February 22, 2018, Naomi was adjudicated uncared for and committed to the custody of the commissioner, who was named her guardian. Thereafter, the court approved a permanency plan that called for reunification of Naomi with the respondent. Following the entry of the order of temporary custody, Naomi and her younger sister were placed in the foster care of their maternal cousin.

On February 3, 2020, counsel for Naomi filed a pleading titled "Child's Motion for Medical Procedure." The motion provided in part: "Naomi . . . suffers from scoliosis, and the treating physician has recommended that she undergo surgery to correct the severe curvature of her spine. . . . Naomi . . . is requesting the procedure, which is recommended by her treating physicians. . . . The child's parent . . . is opposed to the procedure." The motion sought a court order granting Naomi permission to obtain the procedure.

A status report issued by the Department of Children and Families (department), dated May 16, 2018, reflected that "Naomi was seen for a well-child exam on [November 14, 2017]. Naomi was referred to Yale Medical Pediatric Specialties for her back. . . . Naomi was examined by Dr. Brian Smith, who reported she has significant [s]coliosis. Dr. Smith strongly recommended surgery. [The respondent] . . . was in attendance at the appointment. Dr. Smith discussed . . . the benefits and risks of the surgery. [The respondent] is [not] keen

on Naomi having the surgery." On January 15, 2020, the commissioner filed with the court a "Study in Support of Permanency Plan." As relevant to Naomi's scoliosis condition, the study stated: "[Naomi] was seen by Dr. Arya Varthi . . . of the Yale-New Haven Spine Group. Naomi has scoliosis and is in need of surgery to correct the severe curvature of her spine. Her back is 75 degrees curved which is considered extreme. Surgery is typically recommended for any person whose back is curved greater than 45 degrees." The study stated that the respondent remained opposed to the procedure.

Following Naomi's filing of her motion for a court order authorizing the surgery, the department's medical review board (board) examined her case and recommended surgical correction of Naomi's scoliosis. The board's report, dated February 19, 2020, stated that a hearing on Naomi's motion was scheduled for February 22, 2020. The report further stated that "Naomi and her biological father agree with surgical intervention, however, [the respondent] oppose[s] surgery based on religious beliefs. . . . Of note, [Naomi] was referred for bracing in 2018, however, [the respondent] did not believe she needed it at that time."

Although Naomi's motion initially was scheduled for a hearing on February 22, 2020, the hearing did not actually take place until October 26, 2020, almost nine months after the motion was filed. It appears from our review of the record that the delay was attributed, in part, to the COVID-19 pandemic. The commissioner joined in the motion and took the lead in arguing the motion at the hearing. Among the witnesses at the hearing was Nicole M. Taylor, a physician and expert in pediatric medicine, who testified that Naomi's medical issues did not present an emergency and were not life-threatening. At the conclusion of the hearing, the court granted the motion in an oral ruling. The court noted that the surgery had been recommended since 2017, and that it was in the best interest of Naomi for the court to grant the motion.

On December 4, 2020, the respondent filed an appeal of the order authorizing the surgery, claiming that the trial court violated her constitutional rights in ordering the surgery over her objection. On December 8, 2020, she filed a motion to stay the order until her appeal was resolved. Naomi's attorney filed an objection to the motion for a stay, asserting that Naomi had "filed a motion requesting permission to obtain a medical procedure to correct her severe scoliosis on February 3, 2020. [The respondent] objected, and a hearing was scheduled for March 24, 2020. Because of the pandemic and court closures, the surgery and the hearing were postponed indefinitely. On October 26, 2020, a hearing was held, and the court . . . granted the motion for a medical procedure." The surgery was scheduled to take place on January 13, 2021. The trial court conducted a

hearing on the motion for a stay on December 22, 2020, and, in a memorandum of decision dated January 4, 2021, denied the motion.

The respondent then filed, in this court, an emergency motion for review of the order denying her motion for a stay. This motion was dated January 8, 2021, stated that the surgery was scheduled for January 13, 2021, and requested this court to provide expedited review. On January 11, 2021, this court considered the motion for review and granted review but denied the requested relief. This court's order states: "There is currently no stay that would prevent the surgery scheduled for January 13, 2021, from going forward."

On January 19, 2021, the commissioner filed a motion to dismiss this appeal, asserting that the appeal is moot because Naomi successfully underwent the surgery that is the subject of the appeal. This court denied the motion without prejudice to the parties addressing the mootness issue in their briefs. On appeal, the respondent asserts that, although this court can grant her no practical relief, her claims fit within the "capable of repetition, yet evading review" exception to the mootness doctrine. The commissioner continues to contend that the appeal is moot and that the respondent's claims do not meet the requirements for the exception.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction. . . . [A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citation omitted; internal quotation marks omitted.) *Wendy V.* v. *Santiago*, 319 Conn. 540, 544–45, 125 A.3d 983 (2015). "In determining mootness, the dispositive question is whether a successful appeal would benefit [the respondent] in any way." (Internal quotation marks omitted.) Id., 545.

"To qualify under the capable of repetition, yet evading review exception, three requirements must be met. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom the party can be said to act as a surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation

marks omitted.) Id., 545–46. Our Supreme Court first articulated this three part test governing the application of the capable of repetition, yet evading review exception in *Loisel* v. *Rowe*, 233 Conn. 370, 382–83, 660 A.2d 323 (1995).

Upon consideration of these three *Loisel* factors, there can be little dispute that the issue of a parent's ability to direct the health care decisions and religious upbringing of the parent's child, who is in the custody of the commissioner, is a matter of public importance.[1] Further, we assume, without deciding, that there is a reasonable likelihood that the question will arise again affecting either the respondent or other parents for whom the respondent can be said to act as a surrogate. We conclude, however, that the respondent "cannot satisfy the first *Loisel* factor, namely, that the challenged action, or the effect of the challenged action, is by its very nature . . . of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded." (Internal quotation marks omitted.) *In re Emma F.*, 315 Conn. 414, 425, 107 A.3d 947 (2015). The "capable of repetition, yet evading review rule reflects the functionally insurmountable time constraints present in certain types of disputes." (Internal quotation marks omitted.) *Wallingford* v. *Dept. of Public Health*, 262 Conn. 758, 770 n.12, 817 A.2d 644 (2003).

In evaluating whether a substantial majority of cases raising the question posed in the present case would become moot before appellate review could be completed, we find that several factors suggest that such cases would not become moot. First, Naomi's need for surgery was strongly recommended in 2017, yet no motion for court authorization for surgery was filed until 2020. It is likely that such a delay would not occur in a substantial majority of cases. Second, after Naomi filed her motion for surgery, the court closings occasioned by the COVID-19 pandemic resulted in a delay of almost nine months before the motion was heard. Once the court considered the motion, the issues raised therein were adjudicated in a one day hearing. It is highly unlikely that, going forward, future cases will encounter pandemic related delays of this sort. Third, the trial court noted that, because Naomi was seventeen years old and planning to attend college, it was important for her to have the surgery and to complete her recovery before entering college. It is not likely that a substantial majority of cases will have this constraint. In combination, these factors present the situation of a necessary but nonemergency medical procedure where there was (1) a delay in requesting court involvement, (2) a delay in court adjudication and (3) a desire, based on her educational plans, to expedite Naomi's having the procedure. The respondent has not demonstrated that the majority of cases will have these characteris-

tics, and, thus, we conclude that the majority of cases will likely be amenable to a stay to permit appellate review, which could be expedited.

Although an appellate stay is not automatic in juvenile matters, a trial court has authority to order a stay of its ruling to permit appellate review. See Practice Book § 61-12. In addition, when a stay is denied, a party may challenge such denial by filing a motion for review. See Practice Book § 61-14. Pursuant to such a motion for review, this court could modify or vacate the denial and impose a stay. See Practice Book § 66-6. Further, where appropriate, our appellate rules provide wide-ranging authority to expedite the appellate process. See Practice Book §§ 60-2 and 60-3; see also E. Prescott, Connecticut Appellate Practice and Procedure (6th Ed. 2019) § 6-2:7, p. 390.

We conclude that, in the typical case involving a parental objection to a recommended nonemergency medical procedure, none of the factors that persuaded the trial court and this court to deny a stay would be present. The typical case would likely involve a younger child, with court involvement much closer to the point when the need for the medical procedure was identified and without a need for immediacy due to looming college entrance. As a result, such cases could receive appellate review either through a stay or an expedited appeal process or both. See *In re Cassandra C.*, 316 Conn. 476, 480, 493, 112 A.3d 158 (2015) (where child diagnosed with cancer and was in need of chemotherapy, to which child and her mother objected, our Supreme Court denied stay of trial court's order of treatment but heard case on expedited basis, ruling from bench).

The respondent contends that the previously described analysis is contradicted by our Supreme Court's statement in several cases that "[p]aradigmatic examples [of the capable of repetition, yet evading review exception] are abortion cases and other medical treatment disputes." (Internal quotation marks omitted.) *Wendy V.* v. *Santiago*, supra, 319 Conn. 546. The respondent suggests that the reference to " 'other medical treatment disputes' " means that *all* medical disputes are within the exception and can never be moot. A close reading of the cases cited by the respondent, however, persuades us that her reading of that statement goes too far.

The first case to use language approximating the language on which the respondent relies was *Loisel*. In discussing the capable of repetition factor, our Supreme Court in *Loisel* observed that it was appropriate to view the question presented in that case as a proxy for future cases and stated that a failure to do so "would mean that a case equivalent to *Roe* v. *Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973), *the paradigm of an issue capable of repetition, yet evading review*, could

never be heard in the absence of a class action." (Emphasis added.) *Loisel* v. *Rowe*, supra, 233 Conn. 385. *Loisel* involved the issue of eligibility for welfare benefits and did not involve medical treatment. Id., 371. Likewise, five of the six cases cited by the respondent in her appellate brief in support of her claim that all medical treatment disputes present functionally insurmountable time constraints do not concern medical treatment. See *Wendy V.* v. *Santiago*, supra, 319 Conn. 542 (whether hearing was required in connection with application for domestic violence restraining order); *In re Emma F.*, supra, 315 Conn. 417–18 (court order enjoining newspaper from publishing contents of habeas corpus petition mistakenly filed as publically available civil action); *Putman* v. *Kennedy*, 279 Conn. 162, 164, 900 A.2d 1256 (2006) (whether expiration of six month domestic violence restraining order rendered appeal from that order moot); *Wallingford* v. *Dept. of Public Health*, supra, 262 Conn. 759 (jurisdiction of Department of Public Health over land owned by town); *Szymonik* v. *Szymonik*, 167 Conn. App. 641, 651, 144 A.3d 457 (whether orders regarding guardian ad litem fees should be characterized as in nature of child support and therefore not subject to appellate stay), cert. denied, 323 Conn. 931, 150 A.3d 232 (2016). Although it is correct that, in discussing the nature of the exception's inherently time limited factor, each of those cases contains the phrase, "[p]aradigmatic examples are abortion cases and other medical treatment disputes," it is equally correct that, given the issue in each case, the reference to medical treatment disputes was dictum.

The respondent also relies on *Russo* v. *Common Council*, 80 Conn. App. 100, 832 A.2d 1227 (2003), as another case using language "similar" to the "paradigmatic examples" phrase contained in the previously cited cases. *Russo* concerned a legal action seeking correction of a city budget. Id., 102. In discussing whether the plaintiff's case, although moot, was capable of repetition, yet evading review, this court stated: "Medical treatment disputes, such as refusals to accept blood transfusions because of religious beliefs . . . provide examples of cases involving functionally insurmountable time constraints." (Citation omitted; internal quotation marks omitted.) Id., 108. In support of that assertion, this court in *Russo* cited *Stamford Hospital* v. *Vega*, 236 Conn. 646, 654–55, 674 A.2d 821 (1996). In *Stamford Hospital*, an adult patient objected to a blood transfusion on religious grounds. Id., 649–50. Because the patient's physicians believed that blood transfusions were essential for the patient to survive, the hospital filed a complaint requesting that the court issue an injunction permitting the hospital to administer blood transfusions to the patient. Id., 650–51. At an emergency hearing conducted during the early morning hours, the patient's doctors testified that, "with reasonable medical certainty, she would die without blood transfu-

sions." Id. The trial court granted the hospital's request to allow blood transfusions, and the patient recovered. Id., 652. On appeal, the hospital conceded that the case was not moot. Id., 653.

*Stamford Hospital* concerned a clear emergency situation involving a functionally insurmountable time constraint—the patient needed to have blood transfusions immediately or she would die. By citing to *Stamford Hospital*, this court in *Russo* appropriately tethered the phrase "medical treatment disputes" to those situations, such as medical emergencies and abortions, that present truly insurmountable time constraints. See *Russo* v. *Common Council*, supra, 80 Conn. App. 108. We are not persuaded that our Supreme Court has declared all medical treatment disputes—including those involving *nonemergency* medical treatment procedures—to be inherently time limited such that they would always escape appellate review and come within the exception to mootness.

Probably the strongest indication that nonemergency medical treatment disputes do not escape review are the scores of cases in which such review was, in fact, conducted without resort to the exception to the mootness doctrine. See *In re Elianah T.-T.*, 326 Conn. 614, 616, 165 A.3d 1236 (2017) (whether commissioner is authorized to vaccinate child placed temporarily in commissioner's custody over parents' objections to vaccination); see also *In re Eric B.*, 189 Cal. App. 3d 996, 999, 1005, 235 Cal. Rptr. 22 (1987) (whether juvenile court can order minor dependent to undergo periodic medical monitoring for recurring cancer), review denied, California Supreme Court (May 14, 1987); *In re G.K.*, 993 A.2d 558, 559 (D.C. App. 2010) (challenge to court order that directed child and family services agency to decide whether to authorize inpatient, nonemergency psychotropic medications for neglected child in its custody); *In re Karwath*, 199 N.W.2d 147, 148 (Iowa 1972) (challenge to order of juvenile court for surgical removal of children's tonsils and adenoids); *In re Seiferth*, 309 N.Y. 80, 82, 127 N.E.2d 820 (1955) (action seeking to have fourteen year old child declared neglected and his custody transferred to Commissioner of Social Welfare for purpose of consenting to surgery to repair child's cleft palate and harelip); *In re Sampson*, 65 Misc. 2d 658, 659–61, 317 N.Y.S.2d 641 (1970) (action involving nonemergency surgery to correct child's facial disfigurement where child's mother would not consent to blood transfusions during surgery), aff'd, 37 App. Div. 2d 668, 323 N.Y.S.2d 253 (1971), aff'd, 29 N.Y.2d 900, 278 N.E.2d 918, 328 N.Y.S.2d 686 (1972); *In re Guardianship of Stein*, 105 Ohio St. 3d 30, 30–31, 821 N.E.2d 1008 (2004) (whether Probate Court exceeded its authority when it appointed guardian for infant child with power to authorize withdrawal of life-sustaining treatment for child); *In re Green*, 448 Pa. 338, 340–41, 292 A.2d 387 (1972) (action seeking appointment of

guardian ad litem for minor child whose parents objected, on religious grounds, to surgery for child's scoliosis); *In re Hudson*, 13 Wn. 2d 673, 684, 126 P.2d 765 (1942) ("whether, despite . . . good faith decision [of child's mother] that it [was] unwise and dangerous to permit amputation of [minor child's] left arm [which had congenital deformity] as recommended by two surgeons, a parent may be deprived by a juvenile court of custody and control of her child for a sufficient period of time to subject the child to the operation which, in the judgment of the court, the child's welfare demand[ed]"); annot., 21 A.L.R.5th 248, §§ 1–7 (1994) (collecting cases concerning whether and under what circumstances court or public agency may order nonemergency medical treatment to be given to child despite objections by child's parents on religious grounds).

Because the questions presented by the respondent— whether the trial court violated her fundamental right to direct the health care decisions and religious upbringing of her child and what is the correct legal standard to apply regarding parental objection to nonemergency medical treatment for a child in the custody of the commissioner—will not evade review, the present case does not fall within the capable of repetition, yet evading review exception to the mootness doctrine. Further, because there is no practical relief that we can afford the respondent with respect to this claim, the claim is moot, and this appeal must be dismissed.

The appeal is dismissed.

In this opinion the other judges concurred.

* July 22, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] In her principal brief, the respondent raises the issue of the correct legal standard a trial court should use to order nonemergency medical treatment for a child in the custody of the commissioner over a parent's objection on religious grounds. She contends that the trial court's use of the best interest of the child standard is unconstitutional and advocates that the balancing standard suggested by former Chief Justice Chase T. Rogers in her concurring opinion in *In re Elianah T.-T.*, 327 Conn. 912, 918, 171 A.3d 447 (2017), should be adopted in Connecticut. Because of our determination that the appeal is moot and does not qualify for an exception to the mootness doctrine, we do not reach the merits of this claim.

————————————————